In re Application of Petersen & Petersen, Inc. Bee Line Motor Freight et al., Appellants, v. Petersen & Petersen, Inc., Appellee.

45 N. W. 2d 465

Filed January 5, 1951. No. 32806.

*Rosewater, Mecham, Stoehr, Moore & Mecham,* for appellants.

*R. H. Beatty* and *R. E. Powell,* for appellee.

Heard before Simmons, C. J., Carter, Messmore, Yeager, Chappell, Wenke, and Boslaugh, JJ.

Simmons, C. J.

This is an appeal from an order of the Nebraska State Railway Commission which granted a certificate of convenience and necessity to Petersen & Petersen, Inc. Appellants are motor carriers holding certificates of convenience and necessity. We affirm.

The Nebraska State Railway Commission will be hereinafter referred to as the commission.

A copartnership doing business as State Transfer Company held an intrastate certificate of convenience and necessity for extensive routes. The copartnership will be herein referred to as State Transfer.

It appears that State Transfer became and was adjudged bankrupt sometime early in 1949. On April 1, 1949, the commission entered an order to State Transfer to show cause why its certificate should not be revoked unless annual fees were paid. No appearance was made, and such an order was entered effective May 5, 1949.

On July 18, 1949, joint application was made by Petersen & Petersen, Inc., and the trustee in bankruptcy of State Transfer to transfer the certificate of State Transfer to Petersen & Petersen, Inc. Petersen & Petersen, Inc., will be hereinafter referred to as Petersen.

On July 7, 1949, our opinion in the case of In re Application of Neylon, 151 Neb. 587, 38 N. W. 2d 552, was filed.

The commission issued a notice of hearing on July 18, 1949, on the Petersen-State Transfer application, setting it for hearing on August 1, 1949, at 10 a. m., and specifically reciting that applicants must comply with the requirements of the Neylon case.

On July 26, 1949, two of the objecting carriers herein filed a motion to dismiss the application to transfer. This motion, based on the Neylon decision, presented the question of the jurisdiction of the commission to transfer the certificate.

On August 1, 1949, Petersen filed application "for new authority," based on public convenience and neces-

sity. Petersen recited in its supporting statement that the application was supplemental to the joint application of July 18, 1949, and for the same routes and territory. Petersen set up the discontinuance of service by State Transfer, and that the public convenience and necessity required the continuance of the service previously afforded by State Transfer and the granting of "this present application."

Petersen further alleged that Nielsen & Petersen, Inc., a competing motor carrier, had filed an application seeking authority to sell its operating rights to Union Pacific Motor Freight Company. These parties will be referred to herein as Nielsen and Motor Freight. It was alleged that Motor Freight joined in the application. It further was alleged that in this joint application it was stated that any authority to be issued to Motor Freight was to be limited to coordinated rail service with the Union Pacific Railroad, the property transported to be limited to that moving between Union Pacific Railroad stations on railroad bills of lading and at railroad rates; that Nielsen was then performing all-out regular motor transportation service; and that in the event the Nielsen-Motor Freight application was granted, the shipping public would not have available the same kind of service then being rendered by Nielsen, and, for that reason also, public convenience and necessity required the granting of "this present application." Petersen prayed that "this present application be granted," and that hearing be held jointly on it with the joint application of Petersen and State Transfer.

On August 2, 1949, the commission issued notices of hearing. In the Petersen-State Transfer matter it was recited that it had been continued at the request of protestants and was set for August 15, 1949, at 10 a. m., in the commission hearing room. In the Petersen application matter notice was given of a hearing at the same time and place, the notice reciting that Petersen sought a certificate of public convenience and necessity, the

authority sought being the same as that in the Petersen-State Transfer application, and reciting that the application had "been docketed as a new or original application."

It appears by inference from the various proceedings that the trustee in bankruptcy of State Transfer had filed on July 18, 1949, a request that the commission vacate its show-cause order of April 1, 1949. Notice was given of a hearing on that matter for 10 a. m., August 1, 1949. At the request of protestants that matter was continued and reassigned for hearing on August 15, 1949, at the same hour and place as the other applications.

Thereafter, beginning August 15, 1949, and continuing for several days, hearings were held before an examiner on the application of the trustee for vacation of the order to show cause, the transfer application of Petersen-State Transfer, and the application of Petersen for a certificate of public convenience and necessity. Protestants were several holders of certificates of public convenience and necessity covering routes and territory involved in the applications. Applicant offered evidence going generally to the advantage of one carrier dock-to-dock service over multiple and interline carrier service and the need for service such as State Transfer had rendered. Applicant's witnesses likewise testified to the need of service such as that at that time being rendered by Nielsen, but which would not be had if the Nielsen-Motor Freight application were granted.

At the close of applicant's case-in-chief, the protestants moved to consolidate hearings on the Petersen application with the hearing on the Nielsen-Motor Freight application. The motion was denied.

Thereafter on November 2, 1949, the examiner filed a consolidated report in which, after stating generally the situation, he dealt with each application separately. The examiner recommended that the application of the trustee to vacate the show-cause order be denied.

He recommended that the application of Petersen-State Transfer be granted in part and all authority issued thereunder be merged with the authority issued in the Petersen application. Specifically he recommended that the present and future public convenience and necessity required the service proposed in the Petersen-State Transfer. and Petersen applications, and that the applicant in the two matters was fit, willing, and able properly to perform the proposed service. He recommended that the Nielsen-Motor Freight application be granted as modified. The record is not here in this application. It comes into this proceeding by virtue of the Petersen application and its inclusion in the examiner's consolidated report.

To this report exceptions were filed on November 15, 1949, praying that the applications be denied. Oral argument was held thereon on November 23, 1949.

On December 3, 1949, the commission entered a consolidated opinion, findings, and order in the Petersen-State Transfer and Petersen applications in which it reviewed the proceedings in the various applications herein mentioned and specifically stated that "Each of the various applications will be separately considered by the Commission on the record made pertaining to the particular application and separate orders are being entered on this date concerning the subject matter of each of the following applications: * * *." This is followed by reference to the other applications by identifying number. The commission further said: "The Commission, upon due consideration of the evidence adduced at the hearing on the instant applications, the pleadings filed therein, the Examiner's report and recommendation, the exceptions thereto and oral argument thereon as pertaining to this proceeding, * * * and being fully advised in the premises, * * * finds: * * *." The commission then held that the exceptions to the examiner's report concerning these two applications should be overruled and the "report and recommendations

approved insofar as it concerns said applications"; that the present and future public convenience and necessity require the proposed service, setting out the service and the route or territory authorized; that Petersen was fit, willing, and able to perform the proposed service; and that the two applications be merged and a certificate of public convenience and necessity be issued under the Petersen application. It ordered that that be done. The commission denied the application in all other respects.

On the same day, based on similar recitals, the commission entered an order denying the application to vacate the order to show cause which it recites became effective May 5, 1949. Likewise, on the same day by separate order, it granted the Nielsen-Motor Freight application as amended.

On December 20, 1949, petition of protestants was filed for rehearing, reconsideration, and to vacate the order of December 3, 1949, in the Petersen-State Transfer and Petersen application cases. The commission denied it on January 30, 1950. Protestants appeal, assigning error in many particulars. They will be referred to hereinafter as appellants.

The assignments are reviewed under the rules that:

"The grant or denial of a certificate of convenience and necessity by the Nebraska State Railway Commission requires the exercise of administrative and legislative functions and not of judicial powers."

"On an appeal to the Supreme Court from an order of the Nebraska State Railway Commission administrative or legislative in nature, the only questions to be determined are whether the Nebraska State Railway Commission acted within the scope of its authority and if the order complained of is reasonable and not arbitrarily made." In re Application of Neylon, *supra.*

Appellants' first argued assignment is that an order of the commission which rests on alleged facts or information extraneous to the record, or which is entered

under or induced by circumstances reflecting bias or prejudice, is void as denying due process of law and a fair and proper hearing in contravention of Article I, section 3, of our Constitution, and Article XIV, section 1, of the Constitution of the United States.

This contention does not rest on any charge that the examiner did not grant a full, fair, and impartial hearing on the two applications involved in this appeal. Nor is it based on a contention that the commission in hearing the exceptions to the examiner's report was other than fair and impartial. It rests on this situation.

The examiner in his report, after reviewing the different applications herein discussed, stated it was his opinion that "* * * from an analysis of the evidence in all the proceedings, the type of proof submitted, a study of the briefs filed herein and from a consideration of the public interest that it is necessary that all these proceedings be consolidated" as "* * * the over-all issues relating to public interest are the same and each are component parts of the same problem."

Further, it is complained that the examiner, in discussing the particular problems in the applications involved in this appeal, drew upon the "consolidated pool of evidence" for the fact stated as appearing in the Nielsen-Motor Freight hearing evidence to the effect that the Union Pacific Railroad had recently inaugurated coordinated rail-truck refrigeration service on one of its branch lines; that the examiner in the report stated that "A final analysis of all the applications herein make certain that they inevitably turn one upon the other"; and that the examiner stated, "From a consideration of the evidence adduced at the hearings, * * * the Examiner is of the opinion and recommends * * *." This is followed by a series of separate recommendations as to each of the several applications.

Bias and prejudice on the part of the examiner was one of the grounds of exception to the examiner's report. The charge of bias and prejudice goes to statements

made and conclusions announced by the examiner in the course of his reasoning. There is no charge of bias and prejudice on the part of the commission, save as it is argued that the claimed attitude of the examiner inheres in the commission's attitude as the result of the approval of the examiner's report as hereinafter stated.

As hereinbefore recited, the commission specifically stated that it "separately considered" the various applications on the record made as to the particular application, considered "the evidence adduced," the examiner's report and recommendations, and the exceptions as to the applications involved in this appeal, and on that basis approved the examiner's report and recommendations "insofar as it concerns said applications" and issued a certificate of convenience and necessity.

The appeal here is not from the examiner's report but from the order of the commission. We think the commission by its statements, findings, and order made upon consideration of the examiner's report clearly removed the vice, if any there was, in the examiner's report in the matters here complained about. The fact that the examiner, and later the commission, considered the interrelationship of the various applications when determining the action to be taken on them separately does not invalidate the order. That is the obvious duty of the commission in carrying out the legislative policy as expressed in section 75-222, R. R. S. 1943. The matters to which this contention is directed do not establish unreasonable or arbitrary action on the part of the commission.

Appellants' next contention is that the orders of the commission in the application here on appeal and in Nielsen-Motor Freight create multiple or duplicate certificates with no change in service to or benefit of the shipping public and are in essence merely approving an arrangement for private gain offensive to and having no relationship to public interest and public policy.

This argument rests on the following factual situation stated generally.

Nielsen, first as a copartnership and then as a corporation, has been in this class of transportation business in Nebraska for many years. Petersen of Nielsen & Petersen, Inc., is the principal stockholder and active· in the management of the business. For some years Nielsen had a contract to carry freight for the Union Pacific Railroad, mentioned earlier in this opinion. The Union Pacific Railroad organized Motor Freight and the application of Nielsen-Motor Freight ·followed. That application involved Nielsen restricting its general commodity hauling. Motor Freight proposed to pay Nielsen a substantial amount for the transfer of its certificate. Nielsen expected to operate its contract. with Motor Freight at a profit. That matter was involved in the order of the commission issuing a certificate of public convenience and necessity to Motor Freight and the cancellation of operating rights granted by certificate of public convenience and necessity to Nielsen. That order is not involved in this appeal.

Petersen (of Nielsen & Petersen, Inc.), had two sons who grew up with him in the business. They were minority stockholders, officers, and employees of Nielsen in managerial positions, and participated in the plans out of which these applications flow. The two sons sold their stock, resigned as officers of Nielsen, but remained as employees.

The two sons incorporated Petersen· & Petersen, Inc., on June 18, 1949. The father had no interest in the Petersen corporation. The paid-in stock subscriptions furnished the necessary capital for the preliminary operations. Petersen expects to get some of its motor equipment from Nielsen by lease or otherwise, and to lease Nielsen docks and terminal facilities where available. Petersen expects to recruit its employee staff and stockholders in part from Nielsen employees. It is apparent that when and as the entire plan is consummated

Nielsen will be largely restricted to Motor Freight hauling, and Petersen will be in the general transportation field under a certificate of convenience and necessity covering the routes formerly served by State Transfer, and to a certain extent those served by Nielsen at the time of the orders. All these facts were fully revealed to the commission through the hearings of the examiner and were before the commission when the order here assailed was entered. On the basis of these facts, and inferences and conclusions which appellants contend may be taken from them, the appellants seek to have the orders here involved held to be void.

The facts here disclosed, the conclusions to be drawn from them and their impact on the matter of public convenience and necessity, and the fitness of the applicant to properly perform are all within the jurisdiction of the commission to consider and determine. They do not constitute the sole elements to be so considered by the commission, nor is the above the sole evidence on the questions for their determination.

We are not cited to any statutory provision denying the power to the commission that it here exercised. The situation is not such as to bar the order as unreasonable and arbitrary.

Appellants' next contention arises from this situation. As hereinbefore stated, from the recitals in the pleadings it appears that the commission entered an order against State Transfer to show cause why the certificate should not be revoked for failure to pay annual fees, which became effective May 5, 1949, and that when the Petersen-State Transfer application was filed, the referee in bankruptcy also filed an application to set aside that order. Later the Petersen application for a certificate of public convenience and necessity was made. The commission denied the application to vacate the show-cause order.

The commission made a finding and entered an order that the Petersen-State Transfer application and the

Petersen application should be merged and considered as one, and granted in part and issued a certificate of public convenience and necessity to Petersen "under Application No. M-9448, Supplement No. 1"—that being the number assigned to the Petersen application.

The appellants argue that when a denial of the application to show cause was entered, it effectively put an end to the State Transfer certificate and State Transfer was not then a carrier under the act; that the Petersen-State Transfer application therefore became moot and should have been dismissed; and that the commission was without authority to merge it with the Petersen application. The effect of the order entered was to deny that application and to grant the certificate of convenience and necessity under the Petersen application. The authority of the commission to do that is not challenged by this assignment.

Appellants' next contention is that the order of the commission is unreasonable and arbitrary because it has no rational basis in the evidence, is unsupported by requisite findings, and is destitute of evidential integrity.

It is necessary to restate that we are here dealing with an appeal from the order entered in the Petersen-State Transfer and Petersen applications. In that order the commission found that the examiner's report and recommendations should be approved "insofar as it concerns said applications"; that present and future public convenience and necessity require the proposed service to the extent set out in the findings; that applicant Petersen is fit, willing, and able to properly perform the proposed service; and that a certificate of public convenience and necessity should be issued to Petersen, subject to such further orders as the commission may find necessary in the future in the public interest. The validity of the order in Nielsen-Motor Freight is not before us in this appeal.

The argument here is that if the granting of the Nielsen-Motor Freight application would leave the ship-

ping public without proper motor carrier service, the application should have been denied, and, conversely, if the granting of that application did not have that effect, then there was no warrant for granting the Petersen application; that the public need for the Petersen certificate arose as a result of the action of the commission in granting the Nielsen-Motor Freight application; that there is radical error in granting a transfer in Nielsen-Motor Freight because shippers prefer a coordinated railroad-motor freight service and in granting a certificate to Petersen because shippers prefer an independent motor carrier service; that since the evidence shows that these appellants are meeting the reasonable and normal requirements of the shippers, there is no justification for granting the certificate to Petersen; and that the findings of the examiner are mutually repugnant and contradictory.

We are in effect asked to review the record de novo and make independent findings, and on that basis hold the order involved in this appeal to be unreasonable and arbitrary.

It seems to us that appellants oversimplify the shipper, his problems and requirements, and in effect deal with all shippers as in one group. There is ample evidence here that there are shippers who prefer and use the coordinated rail motor service; there are other shippers who prefer and use the one carrier dock-to-dock or "peddle" service; and there are other shippers who prefer and use the single, multiple, or interlined service offered by the appellants. Some prefer and require refrigerated service; others do not. Some prefer and require dock-to-dock service; others do not. This argument of appellants requires us to consider together the action taken by the commission in the Petersen and Nielsen-Motor Freight applications. So considered, it is patent that the action taken is one that reasonably will develop and preserve a highway transportation system properly adapted to the needs of the commerce

of this state, and is in accord with the legislative policy as declared in the act under which the commission acted. § 75-222, R. R. S. 1943. The duty of making that determination rests with the commission. We do not find the solution of the problems presented by these applications to be unreasonable or arbitrary.

Finally, appellants, relying on our holdings in the case of In re Application of Moritz, *ante* p. 206, 43 N. W. 2d 603, contend that before a certificate of convenience and necessity can be lawfully issued to Petersen, they, as existing carriers, should be given the opportunity to render the service, and that they are willing and able to provide any additional equipment and service to meet the reasonable requirements of the shipping public, and hence the order appealed from cannot stand.

The rules relied upon are:

"In determining the issue of public convenience and necessity, controlling questions are whether the operation will serve a useful purpose responsive to a public demand or need; whether this purpose can or will be served as well by existing carriers; and whether it can be served by applicant in a specified operation without endangering or impairing the operations of existing carriers contrary to the public interest."

"The method of regulating public utilities in Nebraska is based upon the theory of regulated monopoly rather than competition and, before one carrier is permitted to take the business of another already in the field, it must be shown that the existing carrier is rendering unsatisfactory service and is unable or unwilling to provide adequate transportation facilities and that the operation proposed by the new carrier will better serve the public convenience and necessity." In re Application of Moritz, *supra*.

The commission here was not dealing with a case where an existing carrier offered to render the service for which a competing carrier sought authority. Here State Transfer had had a certificate of convenience and

necessity and had rendered service which the evidence showed had met a need of commerce. Here Nielsen had for many years rendered a service in the same general commodity field that likewise met a need of commerce. Here appellants, operating independently under a variety of certificates as to routes and authority, had been competing with State Transfer and Nielsen and rendering a service that met a need of commerce. Here State Transfer, because of bankruptcy and inability to operate, was out of business. Here Nielsen proposed by the Nielsen-Motor Freight application to limit its hauling largely to the restricted Motor Freight application. Here the appellants proposed that the service which they had rendered and were willing to render under then existing certificates was sufficient to meet the needs of commerce in this state. Here there was evidence that the service which the appellants rendered, either alone or in connecting or interlined service, was sufficient to meet the needs of a substantial segment of the shipping public. Here, also, there was evidence that a substantial segment of the shipping public preferred the one-carrier service, such as had been had from State Transfer and was then to be had from Nielsen. They gave persuasive reasons for their selection of one-carrier service over the other kind or kinds. Here the commission knew that the public had used extensively the type of service which Petersen proposed to render, although having at all times available the service rendered by appellants. Here the over-all effect of the orders entered was to put Petersen generally in the competing place held by State Transfer and Nielsen. It did not disturb in a substantial way the available carrier service. Had the commission denied the Peterson application then, the one-carrier service of Nielsen being eliminated, the shipping public would have been compelled to accept the materially different service of appellants whether they willed or not.

Under these circumstances the commission obviously

determined that application met the tests as to public convenience and necessity and that the operation proposed by Petersen would better serve the public convenience and necessity than would that being rendered and proposed to be rendered by the appellants. We find no sound basis upon which to place a holding that the commission's order was unreasonable or arbitrary.

The order of the commission has ample evidentiary support in the record and resulted from the exercise of powers within those vested in the commission. Under these circumstances we are without authority to interfere.

AFFIRMED.