IN RE APPLICATION OF CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY. CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY, APPELLEE, v. LEAGUE OF NEBRASKA MUNICIPALITIES ET AL., APPELLANTS.

47 N. W. 2d 577

Filed May 4, 1951. No. 32927.

*Perry & Perry, Clarence C. Kunc,* and *Mockett, Davies, Pace & Perkins,* for appellants.

*J. W. Weingarten* and *W. P. Loomis,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CHAPPELL, J.

Appellee filed an application with the Nebraska State Railway Commission, hereinafter called the commission, for authority to substitute daily passenger trains 41 and 42 for daily passenger trains 15 and 16 between Table Rock and Wymore and daily except Sunday passenger motor trains 23, 24, 89, and 90 between Lincoln and Wymore, by operating trains 41 and 42 between

Lincoln and Table Rock via Wymore instead of via Tecumseh. In other words, the authority sought by the appellee was to discontinue trains 15 and 16 between Wymore and Table Rock and discontinue motor trains 23, 24, 89, and 90 between Lincoln and Wymore, but in lieu thereof to operate trains 41 and 42, with stops at all stations between Lincoln and Table Rock, via Wymore instead of via Tecumseh, and to schedule full stops at all stations between Lincoln and Table Rock by trains 43 and 44 which would continue to operate between Lincoln and Table Rock via Tecumseh, thus providing daily including Sunday train service for all 23 cities and towns involved in each direction on each line.

The alleged reasons for authority to discontinue trains 15, 16, 23, 24, 89, and 90 were that the general use of motor vehicles by the public, both private automobiles and trucks and common carrier busses and trucks, because of their flexibility and convenient operation upon the now numerous modern county, state, and federal highways, had resulted in practical abandonment by the public of such trains for passenger or express transportation in the territory involved. The alleged net result thereof was that such trains were no longer a public need and the direct out-of-pocket expense of their operation had for a long time exceeded and presently greatly exceeded the revenues produced by the operation thereof, causing each of such trains to be operated at a very substantial loss.

Notice of hearing on the application was timely given. Only the city of Lincoln filed formal written objections and it made no appearance at the hearing. On May 22, 23, and 24, and thereafter on June 12, 1950, an extended hearing was had before the commission whereat voluminous evidence was adduced by appellee to sustain the application, and by appellants' witnesses from Roca, Wymore, DeWitt, and Wilber, who filed no formal objections but appeared and testified opposing the application. Thereafter on August 16, 1950, the commission

entered a comprehensive order granting the application. On August 17, 1950, certified copies of such order were respectively mailed to the parties affected. Motion for rehearing, or in the alternative for a reversal of the order, was filed by appellants on August 30, 1950, more than 10 days after mailing of a copy of the order. On September 8, 1950, the commission overruled the motion for rehearing, and on September 13, 1950, within one month from the date of the entry of the order granting the application, appellants filed notice of appeal and deposited the docket fee with the commission.

In their brief filed in this court, appellants assigned as error substantially: (1) That the commission erred in the admission of certain evidence over appropriate objections; (2) that the commission did not have the authority to hear the entire matter involving three separate lines in one proceeding and dispose of the issues with one order; (3) that the application as it related to trains 41 and 42 should have been dismissed; and (4) that the order granting the application was arbitrary and unreasonable. We conclude that assignments 2, 3, and 4, have no merit, and, as hereinafter observed, we will not consider or review the first assignment.

At the outset we are confronted by the appellee's contention that a motion for rehearing timely filed is mandatory in order for this court to review any question except jurisdiction of the commission and sufficiency of the application to sustain the order granting the application, despite the fact that notice of appeal from the order of the commission granting the application after hearing thereon, was filed and the docket fee was deposited with the commission within one month from the date of entry of the order. The answer to the appellee's contention is dependent upon applicable statutes.

In that connection, section 75-405, R. R. S. 1943, provides: "If any * * * person affected thereby, shall be dissatisfied with the decision of the State Railway Commission * * * with reference to any * * * order, act, or

regulation made or adopted by them upon which there has been a hearing before the commission * * * such dissatisfied * * * person affected may institute proceedings in the Supreme Court of Nebraska to reverse. vacate, or modify the order complained of; Provided, the time for appeal from the *orders and rulings* of the commission to the Supreme Court shall be limited to one month from the date of the entry of the *order or ruling* to which complaint is made." (Italics supplied.)

Section 75-406, R. R. S. 1943, provides: "The procedure to obtain such reversal, modification, or vacation of any such order or regulation made and adopted, upon which a hearing has been had before the State Railway Commission, shall be governed by the provisions in force with reference to appeals from the district courts to the Supreme Court of Nebraska; Provided, no motion for a new trial shall be required to be filed, but instead a motion for rehearing *shall be filed within ten days after the mailing of a copy of such order by the commission to the persons affected,* and the time for appeal shall run *in case such motion is filed* from the date of the ruling of the commission on the motion for rehearing." (Italics supplied.)

Section 75-407, R. R. S. 1943, provides: "The evidence presented before the State Railway Commission, as reported by its official stenographer and reduced to writing, shall be duly certified to by the stenographer and chairman of the commission as the true bill of exceptions, which, together with the pleadings and filings duly certified in the case under the seal of the commission, shall constitute the complete record and the evidence upon which the case shall be presented to the appellate court."

The type of orders reviewable was generally discussed in In re Application of Airline Ground Service, Inc., 151 Neb. 837, 39 N. W. 2d 809, wherein it was held: "The Legislature may properly specify the nature of the orders subject to review in setting up a special appellate proceeding."

We call attention to the fact that section 75-405, R. S. 1943, was amended by Laws of Nebraska, 1949, c. 218, § 1, p. 618, not only to change the time for appeal to "one month" but also to add the words "from the date of the entry of the order or ruling to which complaint is made." More important, by section 2 thereof section 75-406, R. S. 1943, was amended by adding the qualifying words "in case such motion is filed" to the provisions relating to motions for rehearing. It appears that the mandate of said section is not that such a motion must be filed in any event in order to "institute proceedings in the Supreme Court of Nebraska to reverse, vacate, or modify the order complained of" but rather, the mandate has relation to when it shall be filed in order to have the benefit of such a motion.

We conclude that the Legislature left it optional, as distinguished from mandatory, whether or not the party aggrieved would timely file a motion for rehearing. Thus if he timely files a motion for rehearing, he may have one month from the ruling thereon within which to appeal, thereby presenting for consideration and review not only errors of law which allegedly occurred during the hearing, but also whether or not the complete record discloses that the commission acted within the scope of its authority and whether or not its order was arbitrary and unreasonable.

On the other hand, if he does not file a motion for rehearing, or it is filed out of time, but his appeal is timely perfected within "one month from the date of the entry of the order * * * to which complaint is made" as in the case at bar, then this court will not consider or review any assigned errors of law which allegedly occurred during the hearing, but will search the complete record to determine whether or not the commission acted within the scope of its authority and whether or not its order was arbitrary and unreasonable. As a matter of course, if his appeal is not in such a case timely perfected within "one month from the date of

the entry of the order * * * to which complaint is made" then this court has no jurisdiction. Barth v. Lincoln Telephone & Telegraph Co., 122 Neb. 325, 240 N. W. 318.

Viewed in that light, the appellee's contention has no merit, and we will search the record to determine whether or not the commission acted within the scope of its authority and whether or not its order granting the application was arbitrary and unreasonable. The foregoing discussion also disposes of the first assignment.

With regard to the second assignment, the record discloses that this proceeding involved a single application, having to do with interrelated trains in a comparatively small triangular adjacent area. In other words, the over-all issues, relating to public passenger transportation needs and services, were each component parts of the same problem. Contrary to appellants' contention, we therefore conclude that it was within the scope of the commission's authority to hear the issues presented by the application in one proceeding and dispose of them with one order. A related contention was disposed of in In re Application of Petersen & Petersen, Inc., 153 Neb. 517, 45 N. W. 2d 465.

With reference to the third assignment appellants argued that the commission should have dismissed the application as it related to trains 41 and 42, because they operated at a profit. In that connection, such trains concededly did make a profit by including their through service between Lincoln and St. Joseph, but the record discloses that they were little used between Lincoln and Table Rock, the intrastate territory here involved. It will be noted also that the application was not to discontinue the operation of such trains, but rather to reroute them in order, as shown by the record, to make a very substantial net annual savings, and still give adequate passenger train service to all of the cities and towns involved notwithstanding the discontinuance of trains 15, 16, 23, 24, 89, and 90, which without dispute were each and all operated at a very substantial loss

because they were little used by the public. We conclude that the third assignment has no merit.

Finally, we turn to the fourth assignment to determine whether or not the order of the commission granting the application was arbitrary and unreasonable. In that connection, the record discloses that under the authority granted, each city and town involved will be served by modern passenger trains daily, including Sunday, both to and from Lincoln via Wymore to Table Rock, and to and from Lincoln via Tecumseh to Table Rock. The record discloses that the entire area to be served by such trains is interlaced by gravel, black-top, or paved county, state, or federal highways, and that all cities and towns involved, except five, were also served by common carrier daily bus service, which services were used by substantially more people than appellee's passenger trains on parallel routes. It does appear that a few people in at least 4 of the 23 cities and towns will suffer some inconvenience from the change of operations, but while that is a factor to be considered, it is not controlling because other adequate passenger train service is provided by the authority granted, and however trains are operated on every line, some people would likewise suffer some inconvenience.

To recite in detail the voluminous evidence appearing in the record before us would serve no purpose. It is sufficient for us to say that this court has only recently adopted two comprehensive opinions involving applications to discontinue trains operated within the state and substitute other even less adequate services by the same railroad for like reasons under circumstances similar to those at bar. In both such cases the order of the commission refusing to permit discontinuance was reversed as arbitrary and unreasonable.

It would serve no purpose to quote at length from those opinions. It is sufficient for us to say that they are controlling and generally sustain the conclusion that a final order of the Nebraska State Railway Com-

mission granting a railroad company authority to discontinue specified passenger trains, operated within the state at a loss and for the operation of which no public need exists, is within the scope of its authority and not arbitrary and unreasonable. In re Application of Chicago, B. & Q. R. R. Co., 152 Neb. 352, 41 N. W. 2d 157; In re Application of Chicago, B. & Q. R. R. Co., 152 Neb. 367, 41 N. W. 2d 165.

In the light thereof, we have examined the record in the case at bar, which discloses ample competent evidence to sustain the application and order of the commission. In other words, we conclude that the commission acted within the scope of its authority and that its order was not arbitrary and unreasonable. Therefore, the order of the commission should be and hereby is affirmed.

AFFIRMED.