In re Service Oil Company. Nebraska State Railway Commission, appellee, v. Service Oil Company, appellant, John Jack Romans, doing business as Romans Transfer, intervener-appellee.

61 N. W. 2d 381

Filed December 11, 1953. No. 33343.

*Swenson, Viren & Turner,* for appellant.

*Clarence S. Beck,* Attorney General, and *Bert L. Overcash,* for appellee.

*Manasil & Erickson,* for intervener-appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

BOSLAUGH, J.

This appeal concerns an order of appellee restricting operations of appellant as a common carrier of property intrastate by authority of a certificate of convenience and necessity previously issued to it by appellee.

The certificate issued to appellant January 17, 1938, authorized it to transport commodities generally, except those requiring special equipment, as a common carrier by motor vehicle in intrastate commerce by "Irregular routes from Ord and within a 50-mile radius thereof, to and from local points, occasionally to and from Omaha, Kimball, intermediate points and points generally throughout the State of Nebraska, on a statewide basis." Appellant was engaged for many years thereafter principally in transporting livestock from Ord and the surrounding territory to Omaha. It required and used three stock trucks in these operations. It later acquired an insulated van-type reefer trailer and inaugurated and conducted a refrigerated service between Ord and Lincoln and Omaha and Ord.

Appellee by an order of October 17, 1950, required appellant to show cause on a named date why its certificate of convenience and necessity, herein designated certificate, should not be suspended, changed, or revoked because of its willful failure to observe the classification of carriers established and published by appellee; its failure to confine its operations to those authorized by its certificate in violation of an order of appellee; and its failure to comply with the provisions of general order No. 82, supplement No. 2, of appellee by conducting regular route operations when its certificate authorized only irregular service. A hearing had before an examiner resulted in a report that appellant had been and was performing regular route motor carrier operations as to particular transportation; that its certificate

authorized only irregular route operations; and that appellant had been and was guilty of willful failure to confine its operations to those authorized by its certificate. It was recommended that its certificate be suspended for a period of 60 days and that it be ordered to cease and desist the operations found to be regular route in character. The exceptions to the report filed October 8, 1951, by appellant were not immediately ruled on by the commission.

A second order was made by the commission on May 16, 1952, requiring appellant to show cause by June 23, 1952, why its certificate should not be suspended, changed, or revoked because of its: Violation during the period September 6, 1951, through April 21, 1952, of the provisions of section 75-228, R. R. S. 1943, in that it had engaged as a common carrier in intrastate commerce not authorized by its certificate; failure during the period designated to perform only operations described in and authorized by its certificate; failure to observe the classification of carriers made by appellee; and failure during the period stated to confine its operations to those authorized by its certificate in violation of an order of the commission.

The pleading of appellant to the order to show cause was in substance a denial of the charges made against it and a request, in the event that the commission found the operations conducted by appellant violated the law of the state or the rules and regulations of the commission, that an application of appellant attached to and made a part of its pleading for a certificate granting it "authority to operate as a regular route operator between Ord, Nebraska, and Omaha, Nebraska" as specifically set forth in the application be approved and granted by the commission, and that a new certificate be issued to appellant as a regular route common carrier with the rights and authority described and requested in the application.

A hearing was had before an examiner and he reported

to the commission that the evidence established that appellant had transported meat from Omaha to consignees in Ord on Mondays and Thursdays from September 6, 1951, through April 21, 1952; from Omaha to consignees in Scotia and North Loup on Tuesdays from February 19 through April 15, 1952; from Omaha to consignees in Ord and Scotia on Mondays and Thursdays from February 7 through April 7, 1952; and that appellant had transported automobile parts from Omaha to consignees at Ord and Burwell almost daily from October 1 through December 28, 1951. The examiner recommended that the commission find that appellant had been and was "performing regular route common carrier operations within the meaning of General Order No. 82, Supplement No. 2, as to the particular movements under consideration"; that the certificate be in part revoked; and that operations of appellant be authorized only "From Ord and within a 50-mile radius thereof, to and from local points, over irregular routes."

The commission found that the certificate of appellant should be revoked and canceled in part for willful violation of the Nebraska Motor Carrier Act and the rules and regulations of the commission; and that the certificate should be changed to authorize transportation by appellant as a common carrier of property by motor vehicle in Nebraska in intrastate commerce of all commodities, except those requiring special equipment, over "Irregular routes from Ord and from within a 50-mile radius thereof, to and from local points, occasionally to and from Omaha, Kimball, intermediate points and points generally throughout the state of Nebraska, on a state-wide basis. RESTRICTION: No meat nor meat products to be transported between Ord, and points within a 50-mile radius thereof, on the one hand, and Omaha, on the other hand." The commission ordered that the certificate of appellant be changed to authorize only the operations as described above. A motion for rehearing was overruled and the commission

ordered appellant to cease and desist from transporting for hire meat or meat products between Ord and points within a 50-mile radius thereof on the one hand and Omaha on the other hand.

There is evidence of these facts: Appellant, a corporation with a place of business in Ord, is and has been for many years in the commercial trucking business. Its principal engagements in the earlier years of its experience were the movement of livestock from Ord and its surrounding territory to Omaha. It acquired and has used three stock trucks for this purpose. On the return trips of the trucks from Omaha any freight it could secure was carried to Ord or points intermediate that it served. Appellant acquired more recently a refrigerated truck described as a 28-foot insulated van-type reefer trailer. It is not refrigerated mechanically but by the use of dry ice. It has been used to transport cream each Sunday from Ord, North Loup, and Scotia to Lincoln. Delivery of the cargo was there made to the Beatrice Creamery Company, now Beatrice Foods Company. The cream was received for transportation at cream stations in the three towns. There were other articles transported on these trips but the principal item was cream. This unit after unloading in Lincoln moved to Omaha and remained there until it acquired a load of freight, including meat and meat products, consigned to Ord or other towns in that vicinity. The meat shipments moved generally on Mondays, Tuesdays, and Thursdays.

Appellant advised Wilson and Company, in answer to its letter of inquiry of August 7, 1950, that "we will give refrigerated service to the following points: Palmer, St. Paul, Elba, Cotesfield, Scotia, North Loup, Ord, Elyria, Burwell, and Taylor. We would like to pick up this meat on Thursday, or we will give twice a week service, if requested." Appellant during 1950 and 1951 advertised "irregular" refrigerated service between Omaha and 10 Nebraska towns, including Ord, all on State Highway No. 11, except Taylor and Palmer. It distributed

cards generally offering service to these points. It has had since July 1950, the services of the Service Exchange Bureau of Omaha. These consisted of telephone service, docking facilities and privileges, and freight pick-up service.

Appellant transported meat or meat products from Omaha to consignees in Ord on Mondays and Thursdays from September 6, 1951, through April 21, 1952; from Omaha to consignees in Scotia and North Loup on Tuesdays from February 19 through April 15, 1952; and from Omaha to consignees in Ord and Scotia on Mondays and Thursdays from February 7 through April 7, 1952. Appellant carried automobile parts from Omaha to consignees at Ord and Burwell very frequently, almost daily, from October 1 through December 28, 1951. The record permits an inference that appellant has continued to serve Ord, Scotia, North Loup, and Burwell in these respects, except the movement of automobile parts was discontinued December 28, 1951.

The single issue is whether or not appellant willfully failed to confine its common carrier operations to the services authorized by its certificate. The certificate permitted transportation by irregular routes from Ord and within a 50-mile radius thereof, to and from local points. Local points as used in the certificate defined places or locations within 50 miles of Ord. The broadest and most liberal interpretation of them would not include Lincoln or Omaha. They may not be considered local to the radial area. They are more than 100 air-line miles "from Ord and within a 50-mile radius thereof." The subsequent language of the certificate occasionally to and from Omaha and points generally in Nebraska excludes these cities from the ones intended and described as local points. Any service that was authorized by the provision of the certificate occasionally to and from Omaha, Kimball, intermediate points, and points generally throughout the State of Nebraska on a state-wide basis was qualified by the word occasionally.

This word must be considered in context and with the provisions of general order No. 82, supplement No. 2, of the commission. It classifies all certificate holders as either regular or irregular route common carriers as to particular operations depending upon which of the categories stated in the order fairly characterizes the particular operations. A consideration of the entire certificate makes it certain that Ord and within a 50-mile radius thereof was established as a primary or base area and that two specified points outside of it were named all of which is characteristic of irregular route radial service. It logically follows that the service which was intended and authorized to Omaha was on an irregular route basis' and limited and qualified by the word occasionally. The word occasionally was discussed in In re Application of Meyer, 150 Neb. 455, 34 N. W. 2d 904, in this manner: "* * * if this court permitted the appellants to haul freight to and from all parts of the state, even occasionally, as they contend their certificate permitted them to do, it would rewrite their certificate so that it would contain no limitation or restriction on the business they could conduct under it. If the commission allowed one carrier to thus broaden its rights and territory granted in its certificate to the unlimited extent claimed in the case at bar, it would be impossible for the commission to properly regulate such carriers in our state." See, also, In re Application of Canada, 154 Neb. 256, 47 N. W. 2d 507; Black v. Palmer, 293 Ky. 231, 168 S. W. 2d 752. The authority of appellant as a carrier was specifically limited by its certificate to irregular route operations. Whatever occasional irregular permission was given it by the certificate must necessarily mean something less than an unqualified irregular route operation.

The commission had a mandate to specify in the certificate the service appellant was authorized to perform. § 75-231, R. R. S. 1943. It had the authority to classify the appellant as an irregular route operator. § 75-225,

R. R. S. 1943. It had the power to test the operations of appellant as a certificate holder by the terms and provisions of its classification. General order No. 82, supplement No. 2; § 75-225, R. R. S. 1943.

In deciding whether or not appellant carried on its transportation operations within the authority granted it an important consideration is the type of service which it performed. The language in Transportation Activities of Brady Transfer and Storage Co., 47 M. C. C. 23 (affirmed by a per curiam decision of the United States Supreme Court in 335 U. S. 875, 69 S. Ct. 239, 93 L. Ed. 418), is appropriate: "There is no proposal now, nor has there ever been, to limit the frequency or quantity of service which respondent or any other irregular-route carrier may render in bona fide irregular-route service, and our power so to do is not in issue in this proceeding. But we do have the power * * * to describe and fix by description the type of service which respondent may render. Its unquestioned right to increase the frequency or quantity of its service is subject at all times to the limitation in its certificate on the type of service which it is authorized to perform."

General order No. 82, supplement No. 2, of the commission, effective March 15, 1948, contains the following:

"1.   Classification—All common and contract carriers undertaking to transport property, or any class or classes thereof, for hire upon highways in Nebraska Intrastate Commerce by motor vehicle, are either regular or irregular route common or contract carriers, as to particular operations, depending upon which of the categories hereinafter set forth fairly reflect such operations.

"2.   Regular Route Common or Contract Carriers.

A.   Regular Route Common or Contract Carriers are characterized by operating (1) between fixed termini, (2) over fixed routes, (3) upon established schedules or at intermittent intervals constituting continuity of service.

B.   Motor Carriers whose operations amount to

continuity of service, as evidenced by (1) habitual or recurrent use of certain routes or highways or frequent service of certain areas, or (2) repeated stops at the same point or points or a substantial portion thereof, or (3) other evidence tending to indicate regularity of route, time or service, are regular route common or contract carriers as to such operations."

The proof is that appellant operated between Omaha and Elba, Scotia, North Loup, Ord, and Burwell in the transportation of meat and meat products and between Omaha and the towns of Ord and Burwell in the transportation of automobile parts. It followed fixed routes in performing the service and it made recurrent and habitual use of State Highway No. 11. It made repeated stops at the same points or a substantial number of them. The service was performed at intermittent intervals sufficient to constitute continuity of service. There was present in the service performed by appellant all of the characteristics of regular route service as delineated in the classification order of the commission. See Transportation Activities of Brady Transfer and Storage Co., *supra.*

Appellant after it commenced refrigerated service advertised in the Omaha Truck Lines Directory, distributed shipper's cards generally, secured telephone service, docking facilities and privileges, and pick-up freight service in Omaha. These were necessary for the assembly of less-than-truckload shipments of freight, the type of freight normally handled by regular route scheduled operators, but they were not characteristic of the irregular route motor carrier on call at any time or place. The finding that appellant had operated without and beyond the authority of its certificate and that it was conducting transportation which was in fact that of a regular route common carrier is supported by convincing evidence.

Appellant was advised by a letter from the commission as early as September 8, 1950, that it had information

that appellant was conducting regular route operations under a certificate which only authorized irregular route transportation. A copy of general order No. 82, supplement No. 2, was enclosed with the letter. Appellant was instructed and requested to forthwith discontinue all regular route operations, to comply with the Motor Carrier Act and the rules and regulations of the commission, and that if it failed to do so its certificate would be subject to revocation. The entire situation was reviewed with counsel for appellant on September 13, 1950. Appellant continued to perform the type of service it was required to discontinue. It did not seek additional authority for its enlarged and changed type of service. This would have been regular procedure. In Transportation Activities of Brady Transfer and Storage Co., *supra,* it is appropriately said: "Whenever, in the normal development and growth of an irregular-route service, the movement of traffic between particular points becomes so constant in point of time and of such volume as to suggest a public need for an added regular-route service between such points, the act provides a means by which appropriate authority for such an operation may be obtained. Noting a tendency for its operation to fall into regular routes, it is the obligation of every irregular-route carrier either to check the tendency and preserve its status, or to obtain appropriate authority for the conversion." The proof is abundant that appellant willfully disregarded the limitations of its certificate and willfully violated the Motor Carrier Act of the state and the rules and regulations of the commission. In Safeway Cabs, Inc. v. Honer, 155 Neb. 418, 52 N. W. 2d 266, this court said: " 'Willful failure,' as used in section 75-238, R. R. S. 1943, is such behavior through acts of commission or omission which justifies a belief that there was an intent entering into and characterizing the failure complained of. A failure to perform an act for a long period of time, which is required by law to be per-

formed, generally constitutes a willful failure to perform."

The commission is authorized to suspend, change, or revoke any certificate of convenience and necessity in whole or in part for willful failure to comply with any of the provisions of the Motor Carrier Act or with any lawful order, rule, or regulation of the commission or with any term, condition, or limitation of a certificate. § 75-238, R. R. S. 1943; General order No. 81 of the commission made on June 19, 1942.

The order of the commission involved in this appeal was made September 5, 1952, and changed the certificate of appellant only to the extent that it could not thereafter transport meat or meat products between Ord and points within a 50-mile radius thereof and Omaha. The transportation of automobile parts had been discontinued by appellant on December 28, 1951. The essence of the change made in the certificate was to prevent the regular route service then being performed by appellant. The record indicates that the commission was lenient with the appellant. It could have entirely revoked its certificate.

Appellant complains of the action of appellee in refusing to consolidate the proceedings originated by the order to show cause with the application attached and made a part of the response of appellant to the order to show cause for a new certificate of convenience and necessity authorizing it to conduct a regular route transportation service. The commission is authorized to govern its proceedings and in the absence of statutory or constitutional inhibition to adopt and pursue its own rules and course of procedure. §§ 75-107 and 75-109, R. R. S. 1943; In re Yellow Cab & Baggage Co., 126 Neb. 138, 253 N. W. 80; In re Application of Chicago, B. & Q. R. R. Co., 154 Neb. 281, 47 N. W. 2d 577. The commission did not abuse its discretion in this regard.

The matter for decision in an appeal from an order of the railway commission, while acting within its jur-

isdiction, is that the order is or is not unreasonable or arbitrary. In re Application of Canada, *supra*. The commission had jurisdiction to change the certificate of appellant. There is evidence supporting the order that it made. The order is not unreasonable or arbitrary. It should be and it is affirmed.

AFFIRMED.