IN RE APPLICATION OF ABLER TRANSFER, INC. ABLER TRANSFER, INC., ET AL., APPELLANTS, V. ROYAL LYON, DOING BUSINESS AS LYON TRANSFER, ET AL., APPELLEES.
73 N. W. 2d 667

Filed December 9, 1955. No. 33812.

*Bernard A. Ptak,* for appellants.

*J. Max Harding* and *Raymond P. Medlin,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

WENKE, J.

This is an appeal from the Nebraska State Railway Commission which will hereinafter be referred to as the commission. Abler Transfer, Inc., of Pierce, Nebraska, filed an application with the commission on September 21, 1953, No. M-10315, seeking approval by the commission of the acquisition by it of the operating rights and authority issued to and then held by Walter Abler, doing business as Abler Transfer, Pierce, Nebraska, in application No. M-1003 and supplement No. 1 thereto. We shall hereinafter refer to Walter Abler, doing business as Abler Transfer, as Abler.

On October 16, 1953, the commission entered an order in application No. M-1003 and supplement No. 1 against Abler, as respondent, to show cause, if any there be, why his certificate of public convenience and necessity should not be suspended, changed, or revoked, in whole or in part, for willful failure to comply with the provisions of the Nebraska Motor Carrier Act, sections 75-222 to 75-250, R. R. S. 1943, as amended; the orders, rules, and regulations of the commission promulgated thereunder; the terms, conditions, and limitations of said certificate; and specifically for cessation of operations and discontinuance of service contrary to General Order No. 81, § (9)(a).

In view of the foregoing the proceedings had related to and concerned itself with both the application filed by Abler Transfer, Inc., seeking approval of the acquisition of the operating rights and authority that had been previously issued to Abler and the order issued by the commission against Abler to show cause why his certificate should not be suspended, changed, or revoked, in whole or in part, for the reasons therein set forth.

The commission sustained in part its order to show cause for willful failure of the certificate holder Abler to

comply with the provisions of sections 75-222 to 75-250, R. R. S. 1943, and the orders, rules, and regulations of the commission promulgated thereunder. It thereupon revoked in part and changed in part the operating authority of Abler and, as changed, authorized the Abler Transfer, Inc., to acquire such rights. It thereupon consolidated the authority, as clarified, in one certificate and authorized its issuance to Abler Transfer, Inc., the certificates previously issued to Abler having been revoked and cancelled.

Abler and Abler Transfer, Inc., filed a joint motion for rehearing and have perfected this appeal from the overruling thereof.

This appeal concerns itself entirely with the change made by the commission in the "Irregular Route Operations" contained in No. M-1003 and the restrictions placed thereon.

Abler appears to have been a pioneer in the trucking business and was so engaged long prior to April 1, 1936. With the passage by the 1937 Legislature of the Motor Carrier Act, Laws 1937, c. 142, p. 526, Abler applied for and on December 30, 1937, was issued his so-called "grandfather" rights under the act. See Laws 1937, c. 142, § 7, p. 531. These rights included regular and irregular route operations./ As evidenced by certificate No. 985, issued in application No. M-1003, the "Irregular Route Operations" were described as follows: "From towns in the vicinity of his regular routes to and from Omaha, Norfolk, Pierce, points on the regular routes and points within a 50-mile radius from Pierce, and occasionally to and from O'Neill, Creighton, Bloomfield, Wausa, Crofton, Neligh and other points within a 140-mile radius of Pierce, Nebraska. Also occasionally to and from all parts of the state."

These operations the commission changed to: "Between points and places within a 50-mile radius of Pierce, Nebraska, and between points and places within said radial area on the one hand, and, on the other hand,

points and places within the State of Nebraska, over irregular routes."

It then placed a further restriction thereon as follows: "Tacking or combining of the regular and irregular route portions of the instant certificate prohibited."

No question is raised on this appeal in regard to the commission's revoking part of the regular route authority held by Abler, nor the limitation placed on the type of services authorized by excluding therefrom authority to transport commodities requiring the use of special equipment other than refrigeration. The reason for not doing so is apparent as the record fully supports the commission's action in this respect.

Abler Transfer, Inc., is a corporation organized by Abler and three of his sons, Leonard, Mark, and Paul. It was organized for the purpose of taking over the trucking business of Abler, apparently due to Abler's failing health.

"Courts should review or interfere with administrative and legislative action of the railway commission only so far as is necessary to keep it within its jurisdiction and protect legal and constitutional rights." Furstenberg v. Omaha & C. B. St. Ry. Co., 132 Neb. 562, 272 N. W. 756.

"On an appeal to the Supreme Court from an order of the Nebraska State Railway Commission administrative or legislative in nature, the only questions to be determined are whether the Nebraska State Railway Commission acted within the scope of its authority and if the order complained of is reasonable and not arbitrarily made." In re Application of Neylon, 151 Neb. 587, 38 N. W. 2d 552. See, also, Furstenberg v. Omaha & C. B. St. Ry. Co., supra; Moritz v. State Railway Commission, 147 Neb. 400, 23 N. W. 2d 545; Nebraska State Railway Commission v. Service Oil Co., 157 Neb. 712, 61 N. W. 2d 381; Effenberger v. Marconnit, 135 Neb. 558, 283 N. W. 223; In re Application of Petersen & Petersen, Inc., 153 Neb. 517, 45 N. W. 2d 465.

"Unless an order of the railway commission is shown to be unreasonable or arbitrary, this court is not authorised to interfere with the power of the commission to regulate common carriers." In re Application of Resler, 154 Neb. 624, 48 N. W. 2d 718.

In Kassebaum v. Nebraska State Railway Commission, 142 Neb. 645, 7 N. W. 2d 464, a similar or comparable irregular route operation was involved as the following in Abler's certificate: "From towns in the vicinity of his regular routes to and from Omaha, Norfolk, Pierce, points on the regular routes and points within a 50-mile radius from Pierce, * * *." Therein we said of such authority: "Kassebaum's certificate is broader in its authority than a certificate limited to named routes, fixed termini and intermediate and off route points." Then we went on to say: "The fact that his business has grown so as to require more frequent and somewhat regular trips cannot be the basis of construing his certificate so as to deny him the right to carry within that territory all of the authorized commodities tendered him. His certificate makes no limitation as to volume of business. He has been authorized to render the service within territorial limitations without regard to volume of or increase of business." Such, we think, was the nature of the authority granted Abler under the quoted part of his "Irregular Route Operation."

In Kassebaum v. Nebraska State Railway Commission, *supra,* the court held: "* * * the legislature has not granted to the Commission the power to classify common carriers as regular or irregular route carriers, nor to establish a formula of 'elements' that determine to which classification a common carrier belongs, nor to test the operations of a carrier according to such classification."

Subsequent to the release of this opinion the 1943 Legislature granted to the commission the following authority: "(c) The commission may, from time to time, establish such just and reasonable classifications of

groups of carriers, included in the term 'common carrier', or 'contract carrier', as the special nature of the services performed by such carrier shall require; and such just and reasonable rules, regulations and requirements, to be observed by the carriers so classified or grouped, as the commission deems necessary or desirable in the public interest and as are consistent with the provisions of this act. (d) All certificates and permits heretofore or hereafter issued by the commission, shall be construed and interpreted and the operations authorized thereunder shall be tested and determined in accordance with such classifications so established and any rule, regulation or requirement prescribed by the commission relating to such carriers so classified." Laws 1943, c. 169, § 1, p. 591, which is now part of section 75-225, R. R. S. 1943.

Pursuant thereto, on December 24, 1943, the commission promulgated its General Order No. 82 dealing with the classification of the services performed by common and contract carriers as to regular and irregular routes. Subsequently, as of March 5, 1948, supplement No. 2 thereto was adopted and is the one herein involved.

Although the amendments to what is now section 75-225, R. R. S. 1943, provided that "All certificates * * * heretofore * * * issued by the commission, shall be construed and interpreted, and the operations authorized thereunder shall be listed and determined, in accordance with such classifications so established and any rule, regulation or requirement prescribed by the commission relating to such carriers so classified," we do not think the act, or any action taken by the commission thereunder, was intended to nor could it, in and of itself, have the effect of suspending, changing, or revoking, in whole or in part, any authority authorized prior to the enactment thereof. That authority the commission has by proceeding under and in accordance with the provisions of section 75-238, R. R. S. 1943, and may only be done for the reasons therein set forth;

that is, "Any such permit or certificate may, upon application of the holder thereof, in the discretion of the State Railway Commission, be revoked or may, upon complaint or on the commission's own initiative, after notice and hearing, be suspended, changed or revoked in whole or in part, for willful failure to comply with any of the provisions of sections 75-222 to 75-250, or with any lawful order, rule or regulation of the commission promulgated thereunder, or with any term, condition or limitation of such permit or certificate." § 75-238, R. R. S. 1943.

As stated in In re Application of Hergott, 145 Neb. 100, 15 N. W. 2d 418: "* * * section 75-231 (now section 75-238, R. R. S. 1943) must be considered a special statutory provision with regard to a particular subject and, as such, controls the general provisions with regard to such subject. * * * the commission, in order to revoke, change or suspend a certificate of public convenience and necessity, must proceed in accordance with the provisions of section 75-231, Comp. St. Supp. 1941, * * *." See, also, In re Application of Neylon, *supra*.

"By statute, willfulness is one of the essential facts to be determined by the commission before it possesses the power to revoke, in whole or in part, a certificate of public convenience and necessity." In re Application of Hergott, *supra*.

"The term 'willful failure,' as used in section 75-238, R. S. 1943, is such behavior through acts of commission or omission which justifies a belief that there was an intent entering into and characterizing the failure complained of." Union Transfer Co. v. Bee Line Motor Freight, 150 Neb. 280, 34 N. W. 2d 363. See, also, Nebraska State Railway Commission v. Service Oil Co., *supra*.

The record establishes that Abler at all times fully responded to all demands by the public for services under and pursuant to his irregular route authority and had sufficient equipment to enable him to do so. We

think that under the factual situation established it was unreasonable for the commission to change his "Irregular Route Operation" authority and that it should be restored.

In considering certain language used in Nebraska State Railway Commission v. Service Oil Co., *supra,* it should be remembered that the question here involved was not therein ruled on nor was it necessary to do so in order to determine the issues therein presented.

Was the restriction placed on Abler's "Irregular Route Operations" arbitrary or unreasonable? The evidence shows that as his business in certain areas increased he established routes out of Norfolk and Neligh which included points on his authorized regular routes and points in his irregular route territory and peddled to these towns on a regular daily schedule and advertised to that effect. Section 75-231, R. R. S. 1943, provides in part: "There shall, at the time of issuance, and from time to time thereafter, be attached to the exercise of the privileges granted by the certificate such reasonable terms, conditions and limitations as the public convenience and necessity may from time to time require, including terms, conditions and limitations as to the extension of the route or routes of the carrier, and such terms and conditions as are necessary to carry out, with respect to the operations of the carrier, the requirements established by the commission." As stated in In re Application of Neylon, *supra:* "It is, of course, true that the commission shall exercise the powers and perform the duties imposed upon it and shall have power to make all needful rules and regulations for the administration thereof." See, also, Art. IV, § 20, Constitution of Nebraska; State ex rel. State Railway Commission v. Ramsey, 151 Neb. 333, 37 N. W. 2d 502. It was entirely within the commission's authority in regulating and administering the authority it had granted to keep these two services separate, although issued in one certificate. We find nothing arbitrary or unreason-

able in its doing so. Whenever, in the normal development and growth of its irregular route operations, the movement of traffic between particular points becomes so constant in point of time and of such volume as to suggest a public need for regular route service between such points the act provides a means by which appropriate authority for such operations may be obtained and the regular route authority extended.

It is suggested this restriction will place Abler Transfer, Inc., at an economic disadvantage because it will result in additional operating costs. In support of this contention are cited the provisions of section 75-222, R. R. S. 1943, and what we said in Kassebaum v. Nebraska State Railway Commission, *supra*, in regard thereto. Therein we said: "The act recites a policy 'to regulate transportation by motor carriers * * * in such manner as to recognize and preserve the inherent advantages of, and foster sound economic conditions in, such transportation and among such carriers in the public interest; promote adequate, economical and efficient service * * * develop and preserve a highway transportation system properly adapted to the needs of the commerce of Nebraska.' Section 75-222, supra." But this refers to the policy of transportation by motor carriers generally and not necessarily to individuals. For the commission to permit Abler to continue to operate as he has been doing could seriously affect other carriers who are serving towns within a 50-mile radius of Pierce on a regular route basis.

In view of the foregoing we reverse that part of the commission's order which changed the irregular route operations originally granted Abler but otherwise approve the commission's order.

AFFIRMED IN PART AND REVERSED IN PART.