*266
 
 Kinkade, J.
 

 These two proceedings in error were heard together in this court, and will be disposed of in one opinion.
 

 The plaintiff in error in case No. 21184, J. P. Grubb, doing business as the Tri-State Transit Company, filed an application with the Public Utilities Commission for a certificate to operate an interstate motorbus line between the city of Columbus, Ohio, and the city of Huntington, W. Va., and return. The route designated in the application passed through the border cities of Portsmouth and Ironton, Ohio, crossed the Ohio river at Ironton to Russell, Ky., and thence through the states of Kentucky and West Virginia to Huntington. The route also embraced a short side loop from Portsmouth, Ohio, to South Portsmouth, Ky., and return to the main route at Portsmouth. The principal contention here arises out of the action of the commission with respect to this side loop between Portsmouth and South Portsmouth.
 

 The plaintiffs in error in case No. 21098 filed protests, stating many reasons why Grubb’s application should be denied by the commission. They averred that no necessity existed for supplementing the serv-. ice then being rendered over the route in question by “other transportation companies then duly operating over that route, claiming that such existing service was not only ample, but more than ample, to meet every convenience and necessity of the traveling public; that Grubb’s application was not, made in good faith, but was a mere scheme and subterfuge to compel other operators to purchase their peace against ruinous competition and unfair operation by Grubb in the carrying of intra-state passen
 
 *267
 
 gers, while pretending to operate as a carrier of interstate passengers only, and in this respect they insisted that the side loop from Portsmouth to South Portsmouth and return was sought for no other purpose except to enable Grubb, by the mere trick of carrying Portsmouth citizens to South Portsmouth and back, thereby to change them from intrastate to interstate passengers, and to then carry them to and from any other points in Ohio in all respects as he might do were he operating under an intrastate certificate.
 

 These protestants asked the commission to suspend hearing upon the application until they could prosecute injunction actions in the federal or other courts, and procure a restraining order against the commission. This the commission declined to do, and proceeded with the hearing of the application. Grubb testified concerning his ability to render the service and his disposition and intention to comply with all proper regulations required by law or by the rules promulgated by the commission. He denied all allegations made against him by the protestants to the effect that he was seeking only to blackmail them into buying him out.
 

 Counsel for Grubb contend that, as he was asking only for an interstate certificate, the commission was without jurisdiction to inquire into the truth or falsity of most of the allegations of the protestants as to bad faith on the part of Grubb in seeking this certificate. The commission sustained this contention of counsel for Grubb in the main, holding that the questions were federal in character, and must be passed on by the federal authorities, and that jurisdiction of the commission was very limited and
 
 *268
 
 well defined by the decisions with respect to interstate carriers.
 

 The protestants outlined in a general way to the commission the character of evidence they wished to offer, and asked to be afforded time to prepare the same so it could be offered; but the commission held and ruled that such evidence would be irrelevant* immaterial, and incompetent for want of jurisdiction of the subject-matter. No such evidence was in fact offered.
 

 The protestants then sought to make their case by the cross-examination of Grubb, covering the same features of the case. This the commission declined to permit, for the same reasons. Exceptions were duly saved.
 

 The hearing was before only two of the commissioners. At the close of the hearing the two commissioners announced orally that the application would be granted as prayed for, and, following this announcement, and immediately thereafter, a written memorandum to the same effect was placed on the files of the case, and both commissioners affixed their signatures thereto, but no formal certificate was then issued. The date at which the certificate was to take effect was stated.
 

 Later the commissioners further considered the application, and determined to grant the application, but not to grant that part of the application covering .the side loop from Portsmouth to South Portsmouth and return, and that part of the application was denied.
 

 The commission, in this further consideration of the application, took notice of other facts within its records and knowledge by reason of former
 
 *269
 
 actions tried against Grubb for violation of tbe regulations of the commission while operating other motorbus lines in this same territory, and, by reason of these facts, the commission found that Grubb’s present application, in so far as it embraces the side loop to South Portsmouth and return, was a subterfuge, as claimed by the protestants, and therefore should be denied. To this latter action Grubb excepted, and prosecutes error in this, court to secure a reversal of the action by the commission. It is contended that there is no evidence on which to base this last finding of the commission, and, furthermore, it is claimed that the commission exhausted its power over the matter when it announced orally that the application would be granted, which was further confirmed by the signed memorandum on the files of the case, and we are now asked to order the commission to issue the certificate in accord with that announcement and memorandum. It is claimed that the action of the commission was final, and nothing remained, except the ministerial act of issuing the formal certificate.
 

 We cannot agree that the authorities cited by counsel sustain this proposition. True, this court has said that, when such action is taken by the commission, it need not go forward forthwith and issue the formal certificate at once, but that may be done at a later date, and that the certificate when issued will complete and finish out that which was orally announced and entered on the files of the case; but that falls very far short of saying 'that the commission, by making such announcement and memorandum, thereby bars itself from all right to further
 
 *270
 
 consider the case before issuing the formal and final certificate.
 

 Our attention is called to another decision of this court, holding that when an irregular route certificate is applied for, and an irregular route certificate is in fact granted, the commission may not at a later date, by a
 
 nunc pro tunc
 
 entry, change that which was done from an irregular to a regular route, by merely saying that it was the intention of the commission to issue a certificate for a regular instead of an irregular route, and this court ordered the commission to restore its first entry, the irregular route. The office of a
 
 nunc pro tunc
 
 entry is not to change what the court or the commission in fact did and recorded, but is to record that which was in fact done, but was not recorded. That case has no application here.
 

 The finding of fact by the commission as to the intent and purpose of Grubb in seeking this side loop from Portsmouth to South Portsmouth and return was amply sustained by the records of the commission, and we see no error in the action of the commission denying that part of the application.
 

 The protestants insist that the commission was in error in granting the remainder of the application because it is not sustained by sufficient evidence, and is clearly against the weight of the evidence. The evidence is not here for the consideration of this court. True, the protestants say it was excluded by the commission on jurisdictional grounds, but that, had the evidence tendered been admitted, it would have established that Grubb was not entitled to the certificate covering any part of the route designated in his application. The record does not make manifest what the rejected evidence would have been had
 
 *271
 
 it been received. 'That being true, this court cannot find that the commission committed prejudicial error by rejecting the evidence. The finding and order of the commission is affirmed. -
 

 Order affirmed.
 

 Marshall, C. J., Day, Allen, Robinson, Jones and Matthias, JJ., concur.