IN RE APPLICATION OF JOHN E. NEYLON. JOHN E. NEYLON, DOING BUSINESS AS NEYLON BROTHERS FREIGHT LINES, LINCOLN, NEBRASKA, APPELLANT, v. NEBRASKA STATE RAILWAY COMMISSION ET AL., APPELLEES.

38 N. W. 2d 552

Filed July 7, 1949. No. 32514.

H. B. Muffly, and Chambers, Holland & Groth, for appellant.

Davis, Stubbs & Healey, and John L. Riddell, for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

WENKE, J.

This is an appeal from a ruling of the Nebraska State Railway Commission which will hereinafter be referred to as the commission.

The record discloses that on February 14, 1946, there

was issued to Christine Slagle, doing business as Slagle Transfer Company, Lincoln, Nebraska, and who will hereinafter be referred to as Slagle, upon her application, numbered M-7683, a certificate of public convenience and necessity. This certificate authorized her to engage in the services of handling commodities generally, except as therein specifically restricted, over irregular routes from Lancaster County, to and from Grand Island, Beatrice, and Fairbury, and occasionally to and from points in the state at large.

On September 29, 1947, Slagle and John E. Neylon, doing business as Neylon Brothers Freight Lines, Lincoln, Nebraska, and who will hereinafter be referred to as Neylon, filed their joint application, numbered M-8664, for the transfer of these operating rights to Neylon.

The record discloses, and it is admitted, that Neylon was not, at the time this application was filed or at any time when any action was taken thereon, a "motor carrier" within the meaning of the act. See section 75-223 (8), R. S. 1943.

On December 26, 1947, at executive session and without hearing or notice upon interested parties, the commission entered the following order: "Upon motion agreed to by both Commissioners present, transfer of certificate in M-7683, Christine Slagle, dba Slagle Transfer Company, Lincoln, Nebraska to M-8664, John E. Neylon, dba Neylon Bros. Freight Lines, Lincoln, Nebraska, was granted, and certificate clarified."

On December 29, 1947, the secretary of the commission, by letter, notified Neylon of the action taken and advised him that, "A copy of the formal order will be forwarded to you."

On the same day the director of the Motor Transportation Department notified Neylon that although his application had been granted he could conduct no operations thereunder until he had complied with certain requirements relating to insurance and R. C. plates. On January 13, 1948, and February 5, 1948, Neylon filed,

and on the same day the commission approved, the necessary insurance. On January 30, 1948, February 6, 1948, and March 1, 1948, Neylon paid annual dues totaling $30. See sections 75-226, R. S. Supp., 1947, and 75-239, R. S. 1943.

On March 2, 1948, McAllister Transfer, Inc., of York, Nebraska, a motor carrier authorized to operate routes between York and Grand Island, Lincoln, Omaha via Lincoln, and elsewhere, filed its objection to application M-8664 on the ground that Slagle had willfully abandoned operations under her certificate. It asked that a hearing be held on the application and that all interested parties be notified thereof.

Neylon, on March 5, 1948, filed a motion to strike these objections. This motion was overruled on the same day. Without notice to either Neylon or Slagle the commission, on the same day, entered the following order:

"IT IS THEREFORE ORDERED by the Nebraska State Railway Commission that the action taken in Application No. M-8664, of John E. Neylon, dba Neylon Brothers Freight Lines, Lincoln, Nebraska, on December 26, 1947, be, and the same is hereby, reconsidered and held for naught.

"IT IS FURTHER ORDERED that said matter be, and the same is hereby, referred to the Motor Transportation Department for hearing."

Thereafter, on March 15, 1948, Neylon filed a motion asking for a rehearing. This motion the commission overruled. It is from the overruling thereof that Neylon appeals.

"The grant or denial of a certificate of convenience and necessity by the railway commission requires the exercise of administrative and legislative functions and not of judicial powers. * * * On an appeal to the supreme court from an order of the railway commission administrative or legislative in nature, the only questions to be determined are whether the railway commission

acted within the scope of its authority and if the order complained of is reasonable and not arbitrarily made." Furstenberg v. Omaha & C. B. St. Ry. Co., 132 Neb. 562, 272 N. W. 756. See Moritz v. State Railway Commission, 147 Neb. 400, 23 N. W. 2d 545.

Neylon contends that the commission was without authority to enter its order of March 5, 1948, holding for naught its previous order of December 26, 1947, without complying with the provisions of section 75-238, R. S. 1943. If the order of December 26, 1947, did grant to Neylon a certificate then his contention is correct for the commission did not comply with the provisions of section 75-238, R. S. 1943, before entering its order of March 5, 1948.

With reference thereto we said in In re Application of Hergott, 145 Neb. 100, 15 N. W. 2d 418: "* * * the commission, in order to revoke, change or suspend a certificate of public convenience and necessity, must proceed in accordance with the provisions of section 75-231, Comp. St. Supp. 1941 (now section 75-238, R. S. 1943), * * *."

It is apparent, from the record, that upon the filing of the joint application of Neylon and Slagle that the commission proceeded to act under the authority granted it by section 75-240, R. S. 1943. But section 75-240, R. S. 1943, does not relate to the commission's authority to issue certificates of convenience and necessity. It relates to the commission's authority to approve and authorize, upon such terms and conditions as it finds to be just and reasonable, the consolidation, merger, purchase, lease, contract to operate, or acquisition of control by the purchase of stock, of the properties of motor carriers for the purpose of ownership, management, or operation thereof. However, the commission, under this section, has such authority only when the situations therein set forth are present and when the conditions therein specified are found to exist. These conditions are: "* * * that the transaction proposed will be consistent with the

public interest and does not unduly restrict competition * * *."

Whether, as incident to the authority of the commission to so consolidate, etc., it would have authority to issue new certificates we need not here decide for the facts do not bring application M-8664 within any of the situations to which the statute is applicable.

It is, of course, true that the commission shall exercise the powers and perform the duties imposed upon it and shall have power to make all needful rules and regulations for the administration thereof. See Article IV, section 20, of the Constitution of Nebraska, and sections 75-107, 75-109, and 75-225, R. S. 1943.

But, as stated in In re Application of Hergott, *supra*: "In conformity with the constitutional provision, the legislature has the right to prescribe how the Nebraska state railway commission may proceed and what authority it may exercise in granting certificates of public convenience and necessity for operation of motor vehicles for hire intrastate."

In this respect the Legislature has provided as follows: "Application for certificates shall be made in writing to the State Railway Commission, be verified under oath, and shall be in such form and contain such information as the commission shall by regulation require. *Upon filing of such application the commission shall serve notice by mail upon all interested parties.*" (Italics ours.) Section 75-229, R. S. 1943.

This statute is general and controls with reference to all applications unless, by statute, specific exceptions are made thereto.

We have said of such certificates that: "* * * a certificate of convenience and necessity is in the nature of a permit or license and that it is not property in any legal or constitutional sense. * * * Such being the case, it is personal in its character, is not transferable, and does not pass by succession." Effenberger v. Marconnit, 135 Neb. 558, 283 N. W. 223.

In the absence of provisions in the statute authorizing the commission to approve the transfer of a certificate from one holder to another it must, in all such cases, actually issue a new certificate and revoke the old.

We have searched the statutes for language whereby it could be said that the commission can authorize transfers but have failed to find any, and none has been pointed out to us. Significant in this respect is the fact that although our act is copied in part from the federal Motor Carrier Act of 1935, 49 U. S. St. at Large, Part 1, c. 498, p. 543, we did not include therein subsection (b) of section 212 thereof or any similar language. See Kassebaum v. Nebraska State Railway Commission, 142 Neb. 645, 7 N. W. 2d 464, and In re Application of Hergott, *supra.*

Section 212 (b), 49 U. S. St. at Large, Part 1, c. 498, p. 555, so far as here material, provides: "* * * any certificate or permit may be transferred, pursuant to such rules and regulations as the Commission may prescribe."

We have therefore come to the conclusion that where certificates have already been issued and applications are made seeking to transfer the operating rights thereunder to others such applications come within the provisions of section 75-229, R. S. 1943, and require a hearing thereon after notice has been had upon all interested parties. This, for the purpose of finding not only if "the proposed service, to the extent to be authorized by the certificate, is or will be required by the present or future public convenience and necessity," but also if "the applicant is fit, willing and able properly to perform the service proposed, and to conform to the provisions of sections 75-222 to 75-250 and the requirements, rules and regulations of the State Railway Commission thereunder * * *." § 75-230, R. S. 1943.

No hearing having been had on or notice given to interested parties of application M-8664 before the order entered on December 26, 1947, it was made without

authority and therefore null and without force and effect. This left the application pending and the order of March 5, 1948, setting it down for hearing meets the requirements of section 75-229, R. S. 1943, provided proper notice was given to all interested parties thereof. But that question is not here as the order of March 5, 1948, was only interlocutory and not appealable.

As stated in Barry v. Wolf, 148 Neb. 27, 26 N. W. 2d 303: "An order is not final when the substantial rights of the parties involved in the action remain undetermined and when the cause is retained for further action. In such a case, the order is interlocutory."

In view of our holdings herein we find the appeal to be premature and therefore is dismissed.

APPEAL DISMISSED.

SIMMONS, C. J., concurring.

I concur with the conclusion of the court. I would place the decision on the question submitted by the parties as to whether the order of December 26, 1947, was in effect a certificate of convenience and necessity or a procedural order within the control of the commission. I would hold it to be merely a procedural order within the control of the commission.

By its terms section 75-238, R. S. 1943, is applicable only where a certificate of convenience and necessity has been issued. See Gregg Cartage & Storage Co. v. United States, 316 U. S. 74, 62 S. Ct. 932, 86 L. Ed. 1283. The verb "issue" means to deliver and to send out officially. 48 C. J. S., Issue, p. 777.

The term "certificate" when used in the act means a certificate of public convenience and necessity issued under the act to common carriers by motor vehicle. § 75-223, R. S. 1943.

Section 75-230, R. S. 1943, provides for the issuance of a certificate if the applicant is found to possess certain qualifications and the proposed service "to the extent to be authorized by the certificate" is or will be

required by the present or future public convenience and necessity.

Section 75-231, R. S. 1943, provides: "Any certificate issued under section 75-230 shall specify the service to be rendered, the routes, the fixed termini, if any, and the intermediate and off-route points, if any, and in case of operations not over specified routes or between fixed termini, the territory within which such carrier is authorized to operate. There shall, at the time of issuance, and from time to time thereafter, be attached to the exercise of the privileges granted by the certificate such reasonable terms, conditions and limitations as the public convenience and necessity may from time to time require, including terms, conditions and limitations as to the extension of the route or routes of the carrier, and such terms and conditions as are necessary to carry out, with respect to the operations of the carrier, the requirements established by the commission."

It is patent that the order of December 26, 1947, does not meet the requirements of the statute, and that in and of itself it cannot be construed to be a certificate of convenience and necessity. Section 75-239, R. S. 1943, requires that Neylon comply with requirements of the commission as to insurance and that "No certificate * * * shall be issued" until that was done. Section 75-226, R. S. Supp., 1947, provides for an annual fee for each motor vehicle operated, payable on or before January 1 of each year after certificate shall have been issued.

Neylon contends that he has complied with these requirements. However, compliance was after December 26, 1947.

In Smith Bros. Revocation of Certificate, 33 M. C. C. 465, the Interstate Commerce Commission had before it and considered section 212 (a) of the federal act, which is comparable to our section 75-238, R. S. 1943. The Interstate Commerce Commission there held that all decisions and orders made before the certificate of convenience and necessity was duly and regularly issued

and became effective were essentially procedural in character and might be set aside, modified, or vacated by the commission. This decision was quoted with approval in Manhattan Coach Lines, Inc. v. Adirondack Transit Lines, Inc., 42 M. C. C. 123, and Lincoln Tunnel Applications, 44 M. C. C. 665. The holding as to this element of the case was approved in United States v. Seatrain Lines, Inc., 329 U. S. 424, 67 S. Ct. 435, 91 L. Ed. 396. We quoted at length from the Smith case in the case of In re Application of Hergott, 145 Neb. 100, 15 N. W. 2d 418. See, also, Interstate Motor Transit Co. v. Public Utilities Commission, 119 Ohio. St. 264, 163 N. E. 713; Pennsylvania R. R. Co. v. Public Utilities Commission, 123 Ohio St. 203, 174 N. E. 737; Penn-Ohio Coach Lines Co. v. Public Utilities Commission, 139 Ohio St. 262, 39 N. E. 2d 745; Reynolds v. Alexandria Motor Bus Line, Inc., 141 Va. 213, 126 S. E. 201; Northern Pac. Ry. Co. v. Board of Railroad Com'rs., 13 F. Supp. 529.