IN RE APPLICATION OF PREISENDORF TRANSPORT, INC.
PREISENDORF TRANSPORT, INC., APPELLEE, v. HERMAN BROS.,
INC., ET AL., APPELLANTS, IMPLEADED WITH RUAN
TRANSPORT CORPORATION ET AL., APPELLEES.

100 N. W. 2d 865

Filed January 29, 1960. No. 34628.

*Nate Holman* and *Viren, Emmert, Hilmes & Gunderson,* for appellants.

*Nelson, Harding & Acklie,* for appellee Preisendorf Transport, Inc.

*Robert E. Powell,* for appellee Ruan Transport Corp.

Heard before CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

WENKE, J.

On December 20, 1957, Preisendorf Transport, Inc., a Nebraska corporation, filed an application, No. M-9267, Supplement No. 1, with the Nebraska State Railway Commission "for authority to operate as a motor carrier of property for hire in intrastate commerce upon the highways of Nebraska," specifically seeking authority to transport "Petroleum Products" over "irregular routes from within 125 mile radius of Grand Island to and from points within 150 mile radius of Grand Island, and occasionally to and from points in Nebraska at large; all shipments to originate or terminate within said 125-mile radius of Grand Island."

The commission caused notice of the application and of the date set by the commission for hearing thereon, which was January 8, 1958, to be served on all parties interested therein by mail. Six common carriers of petroleum products in intrastate commerce by motor vehicle, authorized to operate in the same area for which authority is sought by applicant, filed protests with the commission objecting thereto. Hearing was had before the commission at the time and place specified in the notice. Thereafter, on January 10, 1958, the commission granted the applicant the authority he asked for "on a temporary basis pending full and complete hearing before an examiner and final adjudication thereof by the Commission; * * *."

Hearing on the application was had before an examiner on May 19 and 23, 1958.

Thereafter, on July 1, 1958, the examiner filed his report with the commission recommending that the application be granted. Exceptions were filed to the examiner's report by five of the protestants. On December 5, 1958, the commission overruled these exceptions, approved the examiner's report, granted the application, and ordered that a certificate of public convenience and necessity be issued to applicant authorizing the following operations: "Petroleum products exclusively. * * * Between points and places within a 125-mile radius of Grand Island, Nebraska, and between points and places within said radial area on the one hand, and, on the other hand, points and places within the State of Nebraska over irregular routes."

Five of the protestants filed motions for rehearing or for rehearing and reconsideration and four of them perfected this appeal on March 26, 1959, from the commission's overruling thereof on February 27, 1959. The transcript was filed in the office of the Clerk of this court on April 15, 1959.

"The Nebraska State Railway Commission has original jurisdiction and the sole power to grant, amend, deny, revoke, or transfer common carrier certificates of convenience and necessity and such proceedings are administrative and legislative in character." Houk v. Peake, 162 Neb. 717, 77 N. W. 2d 310. See, also, In re Application of Petersen & Petersen, Inc., 153 Neb. 517, 45 N. W. 2d 465.

"Courts should review or interfere with administrative and legislative action of the Nebraska State Railway Commission only so far as is necessary to keep it within its jurisdiction and protect legal and constitutional rights." Houk v. Peake, *supra*.

"Courts are without authority to interfere with the findings and orders of the railway commission except where it exceeds its jurisdiction or acts arbitrarily." In re Application of Effenberger, 150 Neb. 13, 33 N. W. 2d 296. See, also, Dalton v. Kinney, 160 Neb. 516, 70

N. W. 2d 464; Johnson v. Peake, 163 Neb. 18, 77 N. W. 2d 670.

"On an appeal to the Supreme Court from an order of the Nebraska State Railway Commission, administrative or legislative in character, the only questions to be determined are whether the commission acted within the scope of its authority and whether the order complained of is reasonable and not arbitrarily made." Houk v. Peake, *supra*. See, also, In re Application of Neylon, 151 Neb. 587, 38 N. W. 2d 552; Basin Truck Co. v. R. B. "Dick" Wilson, Inc., 166 Neb. 665, 90 N. W. 2d 268; Miller v. Consolidated Motor Freight, Inc., 168 Neb. 712, 97 N. W. 2d 265.

On September 5, 1959, appellee Preisendorf Transport, Inc., filed its motion to dismiss this appeal for the reason that it is now moot because of the passage of L. B. 578 by the 1959 Legislature. See Laws 1959, c. 342, § 1, p. 1227. L. B. 578 provides that: "All certificates of public convenience and necessity and all permits issued pursuant to sections 75-222 to 75-250, inclusive, Reissue Revised Statutes of Nebraska, 1943, prior to July 7, 1949, without notice and hearing and without a finding of public convenience and necessity are hereby validated and shall not be subject to formal complaint or collateral attack." The act contained an emergency clause and, by reason thereof, became effective on June 17, 1959. In order to understand the basis for this motion it is necessary to relate the factual situation which brought about the filing of the application by appellee.

On March 4, 1938, the commission issued to Lawrence F. Wise, doing business as Wise Service of Grand Island, Nebraska, the identical authority which it issued to appellee on December 5, 1958. Wise's authority is referred to as a "Grandfather" certificate, coming within section 7(a) of L. B. 178 as enacted into law by the 1937 Legislature. See Laws 1937, c. 142, § 7, p. 531. On June 22, 1945, on the joint application of Lawrence F. Wise, doing business as Wise Service of Grand Island,

Nebraska, and Harold L. Wise and Clarence I. Cates, doing business as Wise Service of Grand Island, Nebraska, the commission transferred this authority to Harold L. Wise and Clarence I. Cates, doing business as Wise Service of Grand Island, Nebraska, and ordered that a certificate of public convenience and necessity authorizing the same operations as held by Lawrence F. Wise be issued to the transferees. On August 6, 1946, the commission, on joint application of Harold L. Wise and Clarence I. Cates, doing business as Wise Service of Grand Island, Nebraska, and Wise Service, Inc., a corporation, authorized transfer of this same authority to Wise Service, Inc., a corporation, and ordered a certificate of public convenience and necessity authorizing the same operations as held by Harold L. Wise and Clarence I. Cates be issued to the transferee. On August 2, 1947, the commission, on joint application of Wise Service, Inc., a corporation, and Harry Preisendorf of Grand Island, Nebraska, authorized transfer of this same authority to Harry Preisendorf and ordered a certificate of public convenience and necessity authorizing the same operations as were held by Wise Service, Inc., be issued to the transferee. On February 25, 1949, the commission, on joint application of Harry Preisendorf of Grand Island, Nebraska, and Preisendorf Transport, Inc., a Nebraska corporation of Grand Island, Nebraska, authorized transfer of this same authority to Preisendorf Transport, Inc., and ordered a certificate of public convenience and necessity authorizing the same operation as was held by Harry Preisendorf to be issued to the transferee. All the stock issued by Preisendorf Transport, Inc., was then owned by Harry Preisendorf, his wife, and their daughter; that is, it was a family-owned corporation. All action taken by the commission on these joint applications was done in ex parte proceedings without notice or hearing and, in view of our holding in In re Application of Neylon, *supra,* released July 7, 1949, were null and void. As therein stated: "We

have therefore come to the conclusion that where certificates have already been issued and applications are made seeking to transfer the operating rights thereunder to others such applications come within the provisions of section 75-229, R. S. 1943, and require a hearing thereon after notice has been had upon all interested parties. This, for the purpose of finding not only if 'the proposed service, to the extent to be authorized by the certificate, is or will be required by the present or future public convenience and necessity,' but also if 'the applicant is fit, willing and able properly to perform the service proposed, and to conform to the provisions of sections 75-222 to 75-250 and the requirements, rules and regulations of the State Railway Commission thereunder * * *.' § 75-230, R. S. 1943.

"No hearing having been had on or notice given to interested parties of application M-8664 before the order entered on December 26, 1947, it was made without authority and therefore null and without force and effect." See, also, In re Application of Richling, 154 Neb. 108, 47 N. W. 2d 413.

Appellee operated under the authority granted it by the commission on February 25, 1949, and the commission took no action to prevent its doing so. It appears the commission, after our holding in In re Application of Neylon, *supra,* took the position that its orders and certificates of public convenience and necessity, issued pursuant thereto, were not subject to collateral attack and continued to treat all holders of such transferred authority as valid operators. We released our opinion in R. B. "Dick" Wilson, Inc. v. Hargleroad, 165 Neb. 468, 86 N. W. 2d 177, on November 22, 1957. Therein we held: "* * * a certificate holder has a right under his certificate to take action to prevent one who is operating unlawfully and without any authority from continuing to operate to his injury and damage."

We further stated: "An action for injunctive relief by an interested party may properly be maintained

against a party who is engaged in intrastate commerce as a common carrier under a void certificate of public convenience and necessity."

It appears that the commission, very shortly after our opinion was released in R. B. "Dick" Wilson, Inc. v. Hargleroad, *supra,* sent every holder of a certificate authorizing operations in intrastate commerce on the highways of Nebraska a copy thereof.

Thereafter, on December 11, 1957, five carriers who held valid certificates from the commission authorizing them to engage in intrastate commerce, including some of the appellants, brought an action in the district court for Hall County, the purpose of which is to permanently enjoin appellee from operating under the authority granted it by the commission's order of February 25, 1949. Thereafter, on December 20, 1957, the appellee filed an application commencing this proceeding and pursuant to which the commission entered its order of December 5, 1958, which order is the basis of this appeal. L. B. 578, as passed by the 1959 Legislature, has no application thereto. We said in City of Fremont v. Dodge County, 130 Neb. 856, 266 N. W. 771, that a case must be determined on the law as it stands when judgment is rendered therein. In view of that fact we cannot properly pass on the constitutionality of L. B. 578, but overrule the motion of appellee to dismiss, which is based thereon.

Appellants contend the commission exceeded its authority by granting appellee the authority it requested on a temporary basis, which it did on January 10, 1958. As we have frequently held: "In conformity with the constitutional provision, the legislature has the right to prescribe how the Nebraska state railway commission may proceed and what authority it may exercise in granting certificates of public convenience and necessity for operation of motor vehicles for hire intrastate." In re Application of Hergott, 145 Neb. 100, 15 N. W. 2d

418. See, also, In re Application of Neylon, *supra;* Miller v. Consolidated Motor Freight, Inc., *supra.*

"The power of the Nebraska State Railway Commission to issue a certificate of public convenience and necessity is grounded on the filing of an application, the giving of notice to interested persons, and a hearing." R. B. "Dick" Wilson, Inc. v. Hargleroad, *supra.*

"A temporary certificate is subject to the same requirements under the statute as any other certificate of convenience and necessity. The statute makes no distinction between classes or types of certificates." In re Application of Richling, *supra.*

The record shows that after the application was filed by appellee the commission fixed the time and place for hearing thereon as Wednesday, January 8, 1958, at 9:30 a. m., in the Commission Hearing Room, Capitol Building, Lincoln, Nebraska, and caused service of notice thereof to be given upon all interested parties by mail, which included all of the protestants. Thereby the commission obtained authority to act in regard to the application. It is true that all six protestants, for various reasons, filed requests with the commission that the hearing on the application of appellee be continued. These the commission overruled, as it had a right to do. Whether the commission exceeded its authority by granting this temporary authority in the form in which it did or by letting it continue in force for the length of time that it did are now moot questions for the temporary authority granted by the commission was revoked by its order of December 5, 1958, from which this appeal was taken. It would only be material if we were to set aside the commission's order of December 5, 1958, and thereby, in effect, restore the order granting such authority on a temporary basis.

Section 75-228, R. R. S. 1943, provides that no common carrier by motor vehicle shall engage in intrastate operations on any public highway in Nebraska without having a valid certificate of public convenience, and

necessity issued by the commission authorizing such services. See R. B. "Dick" Wilson, Inc. v. Hargleroad, *supra.*

We come then to the sufficiency of the evidence adduced by the appellee to authorize the commission to grant it the authority which it did. In this respect section 75-230, R. R. S. 1943, provides: "Subject to section 75-237, a certificate shall be issued to any qualified applicant therefor, authorizing the whole or any part of the operations covered by the application, if it is found that the applicant is fit, willing and able properly to perform the service proposed, and to conform to the provisions of sections 75-222 to 75-250 and the requirements, rules and regulations of the State Railway Commission thereunder, and that the proposed service, to the extent to be authorized by the certificate, is or will be required by the present or future public convenience and necessity; otherwise such application shall be denied." The limitation therein contained has no application here.

The burden is on the applicant for a certificate of public convenience and necessity to show that he is fit, willing, and able to perform the service he proposes; that he will conform to the provisions of sections 75-222 to 75-250, R. R. S. 1943, and the requirements, rules, and regulations of the commission promulgated thereunder; and that the proposed service is or will be required by the present or future public convenience and necessity. § 75-230, R. R. S. 1943; Houk v. Peake, *supra;* Miller v. Consolidated Motor Freight, Inc., *supra.*

The evidence adduced by appellee shows that it is fit, willing, and able to perform the service it proposes to perform and that it will conform to the provisions of sections 75-222 to 75-250, R. R. S. 1943, and the requirements, rules, and regulations of the commission promulgated thereunder unless the fact that it has performed, since February 25, 1949, and up to January 10, 1958, under and pursuant to the certificate of public conven-

ience and necessity issued to it by the commission pursuant to an ex parte order of the commission entered without notice or hearing makes it unfit. It is apparent that even after our decision in In re Application of Neylon, *supra*, the commission permitted all holders of certificates issued prior thereto to continue to operate thereunder, apparently feeling such authority was not subject to collateral attack in the courts. Although the judgment of the commission was wrong, as is evidenced by our holding in R. B. "Dick" Wilson, Inc. v. Hargleroad, *supra*, we cannot say the holders of these certificates were intentionally doing wrong by continuing to operate thereunder and did not do so in good faith. They had some right to trust in the judgment of the commission, a body which, under the Constitution and laws of this state, was created for and given authority to regulate the rates and services of common carriers and have general control thereof. Art. IV, § 20, Constitution of Nebraska. It is true that ordinarily ignorance of the law is no excuse, as was held in City of Plattsmouth v. Murphy, 74 Neb. 749, 105 N. W. 293. However, under the situation here presented, we do not think this rule controlling for appellee was operating under color of authority, color meaning an appearance or semblance, as distinguished from real; that is, an apparent right.

We think, as suggested by both appellants and appellee and in view of section 75-222, R. R. S. 1943, that rulings by the Interstate Commerce Commission in dealing with the subject of transportation by common carriers in interstate commerce may properly be considered by the commission, and by this court on appeal therefrom, when dealing with comparable situations in intrastate commerce.

In John R. Lesoine Extension, 61 M. C. C. 77, decided October 15, 1952, the Interstate Commerce Commission, in discussing the fitness of an applicant, said: "In the past this Commission has been very lenient, particularly

during the early stages of regulation, toward truck operators who were engaged in unlawful operations and sought to have the Commission legalize their unlawful acts, principally because of the confusion and misunderstanding on the part of many with respect to the various provisions of the act and their obligations thereunder. However, in Miller and Cahill Common Carrier Application, 30 M. C. C. 737, (decided October 6, 1941), the Commission stated, at page 742—'It may be, however, that in the near future we shall, in the light of several years of administration of the provisions of the act, with ample opportunity on the part of motor carriers to familiarize themselves therewith, adopt a more strict and inflexible rule to the effect that evidence of unlawful operations renders an applicant unfit properly to perform the services for which authority is sought and precludes a grant of authority therefor.'

"Now, at this late date we are confronted with five applicants who have continued the performance of unlawful operations *in virtual open defiance of the act.* It is difficult to conceive that prior to the date these five applicants instituted their unlawful operations they were not aware of the certificate or permit requirements of the act. At any rate they received actual notice prior to the filing of the considered applications and have since continued to operate. *There are, and no doubt will be in the future, occasions when a past unlawful operation does not require a finding of lack of fitness but such is not the case here.* We are convinced that the time for adoption of the more strict and inflexible rule forecast in Miller and Cahill Common Carrier Application, supra, is long overdue." (Emphasis ours.)

In The L. Nelson & Sons Transportation Co., 13 F. C. C. 40,556, decided June 9, 1959, the Interstate Commerce Commission stated: "It has been consistently found in many reports in proceedings under section 5, involving motor carriers, that a prior unlawful consummation of a transaction for which authority is sought, or the un-

lawful accomplishment of the control or management in a common interest of the carriers involved, is not an absolute bar to approval of the transaction. The law violation has been viewed as only one of the elements to be considered. A similar view has been expressed in determining applications for certificates under section 207 of the Act, past violations of law by such applicants having been considered in appraising their fitness to hold the authority sought. Thus, some applications have been granted under section 5 in spite of the unlawful control, * * *." Many of its decisions are cited in support thereof. Therein the commission came to the conclusion that: "* * * law violations are not necessarily a bar to approval of an application, if the public interest will best be served by approval of the transaction presented." To like effect, see, Miller and Cahill Common Carrier Application, 30 M. C. C. 737; D. A. Beard Truck Lines Co. Common Carrier Application, 34 M. C. C. 395; Salyards Extension of Operations, 46 M. C. C. 303; Bindloss Common Carrier Application, 47 M. C. C. 353; C. J. Skjonsby and Orville Heglie Common Carrier Application, 13 F. C. C. 40,569. As stated in C. J. Skjonsby and Orville Heglie Common Carrier Application, *supra:* "It should be emphasized that we do not condone these unauthorized operations but under some conditions past unauthorized operations have been found not to operate as a bar to the granting of authority." The commission held: "* * * that applicants should not be found unfit to perform the proposed operations because of their past unlawful operations since the violations were not wilful and since applicants were willing to conform to ICC regulations."

Under the situation here presented, where appellee has for many years very satisfactorily rendered the service to the public, under color of authority, that it herein seeks authority to continue, we think these holdings apply. In view thereof, we find the evidence shows that appellee is fit, willing, and able to properly

perform the services proposed; that it will fully conform to the provisions of sections 75-222 to 75-250, R. R. S. 1943; and that it will, as it has in the past, fully conform to the requirements, rules, and regulations of the commission promulgated and issued thereunder. In view thereof, we do not think the commission acted either unreasonably or arbitrarily in so finding.

Appellee offered and the commission received evidence of the appellee's past operations under its color of authority. The evidence of these operations went as far back as May 1950. These operations were substantial and apparently, as evidenced by the testimony of some of appellee's customers, very satisfactory. While so operating the evidence shows appellee complied with and fully performed all duties required of it under the rules and regulations promulgated by the commission and other statutory duties imposed upon the holders of such authority while operating thereunder. Appellants objected to the admission of this evidence and here contend it was not admissible and should not have been considered by the commission in determining whether or not the proposed service is or will be required by the present or future public convenience and necessity. The basis for the objection is that since the certificate held by appellee, under which such operations were conducted, was void, the operations were illegal and there was no proper basis of fact upon which the commission could act.

In Bowman Transportation, Inc., 9 F. C. C. 596, the Interstate Commerce Commission held: "The Commission finds that the applicant is improperly operating into and out of the same radial base under the same authority, that the evidence of applicant's past operations may not be introduced as evidence of public need since it was operating without authority, * * *." However, the commision went on to say: "While we have, in some instances, given considerable weight to evidence of past operations as reflecting a need for service,

this has generally been confined to so-called late-grandfather or interim applications. In order that evidence of past operations may be considered in determining whether there is a present or future public need for their continuance, it is prerequisite that such operations: must be shown to have been conducted *under color of right.*"

In McBride's Express, Inc. v. United States, 13 F. C. C. 50,152, it is said: "The Commission found that: applicant's past operations between points in Illinois were unauthorized; the joint board properly refused to consider evidence of tonnage transported without prior authority in determining the issues; and no need for the new service proposed had been proved." The United States District Court, Eastern District of Illinois, affirmed the commission's decision. 72 M. C. C. 32. However, in doing so, the court made the following observation: "In order for such evidence to be entitled to admission and consideration in determining whether there was a present or future need for resumption of such past operations, it is a prerequisite that such operations must be shown to have not been unlawful or at least conducted under some color of right." Authorities are cited in support thereof.

In D. A. Beard Truck Lines Co. Common Carrier Application, *supra,* the commission said: "In the instant proceedings, applicants cannot be considered new operators, since their operations were conducted under color of 'grandfather' rights. The facts of past operations are closely interrelated with the testimony of the interested shipper- or receiver-witnesses dealing with the convenience of, and the need for, the proposed service. Where, as here, the past operations have been conducted under claims of 'grandfather' rights, openly and without subterfuge, we conclude that they should be given consideration in determining the issue of public convenience and necessity."

In Fitterling Transp. Co., Inc., Extension, 43 M. C. C.

581, the commission said: "As stated, applicant has operated over the described combination of its authorized routes in the belief that its certificates permitted such operation. The question of whether a motor carrier may lawfully operate over a combination of two routes which connect at a point not authorized to be served by such carrier was definitely determined only a comparatively short time prior to the hearing herein. In the circumstances, we think that applicant had reason to believe that he could so operate, and that the evidence of such operations should be given appropriate consideration in reaching our conclusions herein."

Under the situation here, as disclosed by the record, we think the commission was right in admitting the evidence of appellee's past operations and that it could properly consider that evidence for the purpose of determining whether or not the service proposed by appellee is or will be required by the present or future public convenience and necessity.

But appellants contend that even if the evidence of the past operations of the appellee is considered, the appellee has not met the burden of proof necessary to support the commission's finding that the proposed service is, or will be, required by the present or future public convenience and necessity.

In cases where new or extended original authority was sought, we have held that: "In determining the issue of public convenience and necessity, controlling questions are whether the operation will serve a useful purpose responsive to a public demand or need; whether this purpose can or will be served as well by existing carriers; and whether it can be served by applicant in a specified operation without endangering or impairing the operations of existing carriers contrary to the public interest." In re Application of Moritz, 153 Neb. 206, 43 N. W. 2d 603. See, also, In re Application of Canada, 154 Neb. 256, 47 N. W. 2d 507; Christensen v. Highway Motor Freight, 158 Neb. 601, 64 N. W. 2d 99; Houk v.

Peake, *supra;* Miller v. Consolidated Motor Freight, Inc., *supra.* Appellants offered evidence in support of each of these issues. However in cases such as now before the court, where the applicant seeks to obtain a lawful certificate to continue in a business which it has been operating under color of authority, we do not think it controls. Here it is apparent that this same business has been operated long enough that the original authority therefor from the commission was under a "Grandfather" certificate. True the subsequent transfers of the authority were void but the various owners thereof continued to operate the business thereunder in good faith and, it is apparent, are still doing so. Six customers of the appellee testified that they had been using appellee's services for various periods of time, that such services were very satisfactory, and that they would like to see appellee continue in business so they could use its services in the future. Under this situation we think the following quotations have application:

"Successful operation in the past creates a presumption that public convenience and necessity require a continuance of such operation." Dougherty Storage & Van Co. Common Carrier Application, 3 M. C. C. 427.

"His past operations were successful and satisfactory, and he merely desires to resume a service so rendered for approximately 10 years. Relying upon the advice of our representative, he failed to include the instant operation in his seasonably filed 'grandfather' application. Through no fault of his own he was thereby deprived of the authority sought herein. Applicant is not a new carrier entering the field. If the application is granted it will not materially adversely affect the operations of existing carriers. In our opinion, the evidence warrants the granting of the authority sought." Salyards Extension of Operations, *supra.*

"We have in numerous cases granted authority on a finding of public convenience and necessity to continue operations, which have been conducted successfully for

some extended period of time, and there is a natural presumption raised in favor of an applicant based on such past successful operation." Werner Transportation Co., 8 F. C. C. 155.

We do not think the commission's finding "That the present and future public convenience and necessity require the proposed service" is either unreasonable or arbitrary. To hold otherwise would destroy a business that has been operated in good faith by the owners thereof since prior to April 1, 1936. In view of what we have herein held and said we affirm the action of the commission.

AFFIRMED.