In re Application of Paul Abler.
Paul Abler, doing business as Central Transport
Company, appellee, v. Wheeler Transport Service, Inc.,
et al., appellants, Impleaded with Melton Transport
Company of Nebraska, appellee.

101 N. W. 2d 476

Filed February 5, 1960. No. 34613.

*Nate C. Holman, Robert E. Powell,* and *Viren, Emmert,
Hilmes & Gunderson,* for appellants.

*Nelson, Harding & Acklie,* for appellee Abler.

Heard before Carter, Messmore, Yeager, Chappell,
Wenke, and Boslaugh, JJ.

Messmore, J.

On December 20, 1957, Paul Abler, doing business as
Central Transport Company, hereinafter referred to as
Central Transport, filed an application with the Ne-
braska State Railway Commission, hereinafter referred
to as the commission, seeking approval of a transfer of a
certificate of public convenience and necessity, here-
inafter referred to as a certificate, from a partnership
composed of Aaron E. Brodhagen, Erwin L. Brodhagen,
and Lorene B. Rathjen doing business as Central Trans-
port Company, Pierce, Nebraska, to himself. Such cer-
tificate, No. M-7305, authorized motor common carrier
transportation of crude oil and refined petroleum prod-
ucts in bulk as follows: "From all producing and re-
fining points in the state of Nebraska as points of origin,
on one hand, to Wayne, Stanton, Madison, Pierce, Ante-
lope, Knox, Cedar, Dixon, Dakota, Boone Counties, as

points of destination, on the other hand, over irregular routes."

As stated in the application, the proposed service would be in competition with Transit, Inc., which after March 1, 1958, became known as Ruan Transport Corporation, Herman Bros., Inc., R. B. "Dick" Wilson, Inc., of Nebraska, Melton Transport Company of Nebraska, and Wheeler Transport Service, Inc.

Transit, Inc., Wheeler Transport Service, Inc., R. B. "Dick" Wilson, Inc., of Nebraska, Herman Bros., Inc., and Melton Transport Company of Nebraska, motor carriers, filed protests to the transfer application and petitions in intervention in the order to show cause against the transferor, the partnership composed of Aaron E. Brodhagen, Erwin L. Brodhagen, and Lorene B. Rathjen. All of the protestants named above except Melton Transport Company of Nebraska, are now joined as appellants in this appeal from the order of the commission vacating the order to show cause and granting the application of Paul Abler.

P. J. O'Gorman filed application No. M-2606 to establish vested rights as of April 1, 1936, to operate as a motor carrier of property for hire upon the highways of Nebraska. By order of the commission on February 24, 1938, a "grandfather" certificate was duly issued to P. J. O'Gorman, Norfolk, Nebraska, authorizing certain motor carrier operations in the transportation of bulk petroleum and petroleum products in Nebraska intrastate commerce. This certificate was subsequently extended and broadened by application made to the commission to include the same service and territory as that authorized in the certificate involved in the proceedings now before this court.

In November 1941, P. J. O'Gorman transferred his "grandfather" certificate to the Central Transport Company, a partnership consisting of E. A. Lambrecht, Aaron E. Brodhagen, Erwin L. Brodhagen, and Paul E. Brodhagen, an uncle, two sons, and their father. After the

death of Paul E. Brodhagen, the certificate was transferred in 1944 to the partnership composed of Aaron E. Brodhagen, Erwin L. Brodhagen, and Lorene B. Rathjen, two brothers and their sister, doing business as Central Transport Company of Pierce, Nebraska. Both of the above transfers were the result of properly executed applications filed with the commission and payment of fees therefor, and both of such transfers were duly authorized by orders of the commission. These transfers were approved by the commission in ex parte proceedings without hearing or notice.

The application of Paul Abler was set for hearing before the commission on January 9, 1958. Notice was given to all parties interested as provided for by law, and hearing was held in the commission hearing room, Capitol Building, Lincoln, Nebraska, at 9:30 a.m., January 9, 1958. Certain protestants, including appellants, filed motions for continuance on the grounds that their counsel would, by necessity, be engaged in other legal business at various places on that date. The motions for continuance were overruled by the commission, and the commission had a right to make such an order. The application of Paul Abler came on for hearing along with an order to show cause issued against the transferor, at Lincoln, Nebraska. No appearance was made by or on behalf of any of the protestants at this hearing.

The record made before the commission on January 9, 1958, disclosed that an inspector of the commission checked the equipment lease between Paul Abler and Central Transport, and the equipment to be used in the operation of such business. The inspector also investigated Abler's character references and financial standing, and found the same to be good. In addition, the inspector testified that Central Transport, to his knowledge, had never refused to give service to any shipper when such service was requested by the shipper, and that he found no complaints or dissatisfaction by any

consignee relating to the operations of Central Transport service.

The assistant chief of the Division of Motor Fuels of the Department of Agriculture and Inspection testified that Central Transport had held a transporter's permit for many years and had filed insurance covering public liability and property damage with the department throughout all of that period of time. It was also shown by the testimony of this witness that Central Transport had filed reports of shipments transported by it from 1950 through 1957, all of which had been checked by those authorized by the division to do so; that Central Transport had never held an importer's license and as a consequence all of the shipments shown by the reports would be movements in intrastate commerce of common carrier shipments in nature; and that the relationship between Central Transport and the Division of Motor Fuels had been very satisfactory.

Aaron E. Brodhagen testified that R. C. plates had been purchased every year for Central Transport since 1941; that the required and proper insurance had been carried and maintained at all times; that common carrier transportation service had been rendered by Central Transport continuously; and that at no time had service been refused to any persons or company of the shipping public seeking to utilize the service of Central Transport within the scope of its right to do business as authorized by the commission.

Seven witnesses appeared in support of the application of Paul Abler. All of these witnesses were dealers of petroleum products or bulk plant operators handling petroleum products. To detail this testimony would unnecessarily lengthen this opinion. Each of these witnesses testified that Central Transport had been operating under its certificate for a long period of time, and in addition testified as to the manner in which they used the services of Central Transport. These witnesses further testified that in utilizing the services of

Central Transport they had no complaints against the service, and described such service as very good, satisfactory, or excellent. Some of such witnesses testified that the service so rendered was superior to service rendered by any other common carrier with which they had transacted business. Six of these witnesses testified that they preferred the service of Central Transport and desired to retain such service. One witness testified he had used Central Transport service in an emergency and found such service satisfactory. These witnesses further testified that they had confidence in Paul Abler's ability and his capacity to handle the operation of Central Transport should the commission see fit to grant the transfer application, and that they would continue to use his service.

On January 10, 1958, the commission issued its joint order wherein the order to show cause issued against the applicant, Paul Abler, and the transferor was continued to a date later to be determined, and granted temporary approval of the transfer to the appellee, Paul Abler, pending further hearing before an examiner of the commission.

Pursuant to notice, the matters again came on for hearing before an examiner of the commission on May 21, 1958, and June 3, 1958. The testimony presented by Paul Abler at the hearing before the examiner was essentially the same as that given at the hearing before the commission on January 9, 1958, and need not be discussed further.

The four witnesses who testified in behalf of the protestants represented common carriers who were in competition with Central Transport. All of them serve the same territory as Central Transport, are prepared to serve additional business interests, are actively engaged in soliciting business, and have all the necessary facilities to handle any business that may come to them. Ruan Transport Company, formerly Transit, Inc., and

Wheeler Transport Service, the testimony disclosed, had lost business to Central Transport.

The appellee requested the commission to expedite the hearing on his application due to the fact that this court, on November 22, 1957, rendered a decision in the case of R. B. "Dick" Wilson, Inc. v. Hargleroad, 165 Neb. 468, 86 N. W. 2d 177, which indicates that certificates of public convenience and necessity transferred to present holders, without the benefit of notice and hearing, may be null and void and that a competitor may properly seek injunctive relief through the courts to restrain such certificate holders from continued operations. The motion for rehearing in the above-cited case was overruled. A further reason for expediting the hearing on this application was that on or about December 10, 1957, the appellants Wheeler Transport Service, Inc., R. B. "Dick" Wilson, Inc., of Nebraska, Transit, Inc., Herman Bros., Inc., and Melton Transport Company filed a petition in the district court for Pierce County seeking a temporary and permanent injunction against any further operations by Central Transport, alleging that Central Transport's certificate was null and void for lack of notice and hearing when said certificate was transferred by the commission to it.

As stated in In re Application of Neylon, 151 Neb. 587, 38 N. W. 2d 552, released July 7, 1949: "We have therefore come to the conclusion that where certificates have already been issued and applications are made seeking to transfer the operating rights thereunder to others such applications come within the provisions of section 75-229, R. S. 1943, and require a hearing thereon after notice has been had upon all interested parties. This, for the purpose of finding not only if 'the proposed service, to the extent to be authorized by the certificate, is or will be required by the present or future public convenience and necessity,' but also if 'the applicant is fit, willing and able properly to perform the service proposed, and to conform to the provisions of

sections 75-222 to 75-250 and the requirements, rules and regulations of the State Railway Commission thereunder * * *.' § 75-230, R. S. 1943.

"No hearing having been had on or notice given to interested parties of application M-8664 before the order entered on December 26, 1947, it was made without authority and therefore null and without force and effect." See, also, In re Application of Richling, 154 Neb. 108, 47 N. W. 2d 413.

On September 5, 1959, appellee filed a motion to dismiss the appeal for the reason that it was moot because of the passage of L. B. 578 by the 1959 Legislature. See Laws 1959, c. 342, § 1, p. 1227. Legislative bill 578 provides that: "All certificates of public convenience and necessity and all permits issued pursuant to sections 75-222 to 75-250, inclusive, Reissue Revised Statutes of Nebraska, 1943, prior to July 7, 1949, without notice and hearing and without a finding of public convenience and necessity are hereby validated and shall not be subject to formal complaint or collateral attack." This act contained the emergency clause and by reason thereof became effective on June 17, 1959.

O'Gorman's authority previously mentioned is referred to as a "grandfather" certificate coming within section 7 (a) of L. B. 178 as enacted into law by the 1937 Legislature. See Laws 1937, c. 142, § 7, p. 531.

Legislative bill 578, as passed by the Legislature, has no application here. We said in City of Fremont v. Dodge County, 130 Neb. 856, 266 N. W. 771, that a case must be determined on the law as it stands when judgment is rendered therein. In view of that fact we cannot properly pass upon the constitutionality of L. B. 578, but overrule the motion of appellee to dismiss, which is based thereon. See Preisendorf Transp., Inc. v. Herman Bros., Inc., *ante* p. 693, 100 N. W. 2d 865.

As stated in the case of Preisendorf Transp., Inc. v. Herman Bros., Inc., *supra:* "We think, * * * in view of section 75-222, R. R. S. 1943, that rulings by the

Interstate Commerce Commission in dealing with the subject of transportation by common carriers in interstate commerce may properly be considered by the commission, and by this court on appeal therefrom, when dealing with comparable situations in intrastate commerce."

In the instant case we adopt the reasoning of the authorities cited in the case of Preisendorf Transp., Inc. v. Herman Bros., Inc., *supra,* setting forth rulings by the Interstate Commerce Commission and such other authorities appearing therein relating to the subject matter here involved.

In the instant case it is apparent that this same business has operated long enough that the original authority therefor from the commission is under a "grandfather" certificate. True, the subsequent transfers of the authority were void, but the various owners thereof continued to operate the business thereunder in good faith and, it is apparent, are still doing so.

As shown by the record presented before this court, Central Transport, a partnership, for many years has rendered service to the public under color of authority, and Paul Abler, the applicant herein, has been manager of Central Transport for more than 2 years and seeks authority to continue such service. We find the evidence shows that Paul Abler, the applicant, is fit, willing, and able to properly perform the services proposed and will fully conform to the provisions of sections 75-222 to 75-250, R. R. S. 1943, and that Central Transport will, as it has in the past, fully conform to the requirements, rules, and regulations of the commission promulgated and issued thereunder.

The law as set forth in Preisendorf Transp., Inc. v. Herman Bros., Inc., *supra,* is applicable to the facts in the instant case. Therefore, we adopt the reasoning and the law as announced therein as controlling in the instant case on this appeal. Consequently, it would serve no useful purpose to repeat the authorities set forth in

said-cited case, but we make reference thereto to support our decision in this appeal.

As stated in Preisendorf Transp., Inc. v. Herman Bros., Inc., *supra:* "It is apparent that even after our decision in In re Application of Neylon, *supra,* the commission permitted all holders of certificates issued prior thereto to continue to operate thereunder, apparently feeling such authority was not subject to collateral attack in the courts. Although the judgment of the commission was wrong, as is evidenced by our holding in R. B. 'Dick' Wilson, Inc. v. Hargleroad, *supra,* we cannot say the holders of these certificates were intentionally doing wrong by continuing to operate thereunder and did not do so in good faith. They had some right to trust in the judgment of the commission, a body which, under the Constitution and laws of this state, was created for and given authority to regulate the rates and services of common carriers and have general control thereof. Art. IV, § 20, Constitution of Nebraska."

We do not think the commission acted either unreasonably or arbitrarily, nor do we think that the commission's finding that the present and future public convenience and necessity require the proposed service is either unreasonable or arbitrary. To hold otherwise would destroy a business that has been operated by the owners thereof covering the same type of service and in the same trade territory at least since November 1940.

In view of what we have herein held and said, we affirm the action of the commission.

AFFIRMED.